J-A11029-18

2018 PA Super 287

WAG-MYR WOODLANDS HOMEOWNERS ASSOCIATION, BY DAVID MORGAN AS TRUSTEE AD LITEM

        Appellant

        v.

JOHN L. GUISWITE AND MICHELLE P. GUISWITE, THOMAS H. JEFFRIES AND SHIRLEY A. JEFFRIES, JUDY A. HEIMBACH AND JOAN A. STEARNS, AS CO-EXECUTRICES OF THE ESTATE OF JAMES D. HOLMAN, DECEASED, JOAN A. STEARNS, GAYLE N. PHILLIPS, BETSY A. PHILLIPS, JEFFREY A. CORSON, MARY ANN MCHALE, RONNIE L. DEWALT, MELISSA T.  DEWALT, ANTHONY J. HAYES AND MEREDITH L. HAYES

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

IN THE SUPERIOR COURT OF PENNSYLVANIA

No. 1247 MDA 2017

Appeal from the Judgment Entered September 13, 2017
In the Court of Common Pleas of Clinton County Civil Division at No(s):
954-2016

BEFORE:  STABILE, J., NICHOLS, J., and PLATT, J.[*]

OPINION BY NICHOLS, J.:            **FILED OCTOBER 19, 2018**

---

[*] Retired Senior Judge assigned to the Superior Court.

Appellant Wag-Myr Woodlands Homeowners Association,[1] by David Morgan as Trustee *ad Litem*,[2] appeals from the judgment entered in favor of Appellees John L. and Michelle P. Guiswite, Thomas H. and Shirley A. Jeffries, Judy A. Heimbach and Joan A. Stearns, as co-executrices of the estate of James D. Holman, deceased, Joan A. Stearns, Gayle N. and Betsy A. Phillips, Jeffrey A. Corson, Mary Ann McHale, Ronnie L. and Melissa T. DeWalt, and Anthony J. and Meredith L. Hayes (collectively, Appellees).[3] The judgment was entered after a nonjury trial at which the trial court determined that Appellees were not required to pay Appellant to maintain a shared easement

---

[1] Appellant was formed after Wag-Myr Woodlands, Inc., developed the community from property purchased from Helen Wagner. During the period relevant to this appeal, thirty-eight lots, including those owned by Appellees, were included within the Wag-Myr development.

[2] Originally, Appellant did not designate a trustee *ad litem* in this matter. On July 25, 2017, the trial court granted a motion filed by Appellant to amend the caption to include David Morgan as Trustee *ad Litem*. **See** Pa.R.C.P. 2152 (providing that an action by an unincorporated association "shall be prosecuted in the name of a member or members thereof as trustees *ad litem* for such association"). We note that Appellees did not object to the lack of a trustee *ad litem* at trial or the designation of a trustee *ad litem* when Appellant sought to amend the caption. Additionally, we note that a failure to comply with Rule 2152 is not dispositive when raised for the first time on appeal. **See In re Barlip**, 428 A.2d 1058, 1060 (Pa. Cmwlth. 1981) ("It is settled that a court will not permit an objection concerning compliance with Pa.R.C.P. No. 2152 to be raised for the first time on appeal, and . . . we will not do so here.").

[3] We adopt the trial court's nomenclature distinguishing between the Hayes Appellees and the non-Hayes Appellees. All Appellees other than the Hayes Appellees have deeds that do not reference the potential formation of a homeowners' association (HOA). The Hayes Appellees' deed, however, references the future formation of an HOA.

used to access their properties. The trial court made this determination because a subdivision map was not admitted into evidence and the court could not determine whether Appellees were part of a planned residential community. Appellant claims that Appellees have a common law obligation to pay for the maintenance of the shared easement. We vacate the judgment and remand for further proceedings consistent with this opinion.

The trial court summarized the relevant background to this case as follows:

> [Wag-Myr Woodlands, Inc.] purchased approximately 700 to 800 acres of land from Helen Wagner on December 2, 1993. [Appellees] obtained their real property as follows:
>
> a. [Appellees] John L. Guiswite and Michelle P. Guiswite, by Deed dated October 1, 2003[,] from [Wag-Myr Woodlands, Inc.] recorded in Record Book 2003, Page 6837[, including an easement from Township Route 415 to the parcel].
>
> b. [Appellees] Thomas H. Jeffries and Shirley A. Jeffries, by Deed dated February 26, 2002[,] from the Household Finance Corporation, recorded as instrument No. 2002-01531 and by Deed dated October 27, 2003[,] from [Wag-Myr Woodlands, Inc.], recorded as instrument No. 2003-07498[, including an easement from Township Route 415 to the parcel].
>
> c. [Appellees] Judy A. Heimbach and Joan A. Stearns as Co-Executrices of the Estate of James D. Holman, deceased, by Deed dated August 4, 1999[,] and recorded in Record Book 1046, Page 140, by Deed dated November 3, 2000[,] from [Wag-Myr Woodlands, Inc.] recorded in Record Book 1123, Page 570[,] and by Deed dated July 17, 2001[,] from [Wag-Myr Woodlands, Inc.], recorded as Instrument No. 2001-0374[, all including an easement from Township Route 415 to the parcels].

d. [Appellees] Gayle N. Phillips and Betsy A. Phillips by Deed dated November 8, 1990[,] from Francis Lee Wagner and Helen Wagner, recorded in Deed Book No. 450, Page 129[, including an easement from Township Route 415 to the parcel].

e. [Appellees] Jeffrey A. Corson and Mary Ann McHale by Deed dated September 14, 1995[,] from [Wag-Myr Woodlands, Inc.], recorded in Deed Book 767, [P]age 155[, including an easement from Township Route 415 to the parcel].

f. [Appellees] Ronnie L. DeWalt and Melissa T. DeWalt by Deed dated May 20, 1999[,] from [Wag-Myr Woodlands, Inc.], recorded in Deed Book 1029, Page 227[, including an easement from Township Route 415 to the parcel].

g. [Appellees] Anthony J. Hayes and Meredith L. Hayes by Deed dated October 27, 2003[,] from [Wag-Myr Woodlands, Inc.], recorded as Instrument No. 2003-07511[, including an easement from Township Route 415 to the parcel].

On August 28, 2012, [Appellant] adopted bylaws which were duly recorded in the Office of Recorder of Deeds of Clinton County as Instrument No. 2012-3806. Amended bylaws were later adopted[,] which were dated June 27, 2013[,] and recorded as Instrument No. 2013-3250 in the Office of Recorder of Deeds of Clinton County.

All [Appellees] already had possession of their properties and were utilizing and maintaining a roadway [(Wag-Myr Lane) as the sole means of traveling] to and from their properties prior to the adoption of [b]ylaws by the HOA. . . . With the exception of [the Hayes Appellees], there is no mention in any of the [Appellees' d]eeds regarding the HOA existing or ever being formed. [The Appellees' deeds indicate that the owner shall have "a right-of-way for ingress, egress and regress . . . from [Township Route 415]" to the premises over a fifty-foot wide roadway.[4]] The Hayes

_____

[4] **See** Clinton Cty. R. Book 450, Page 130; R. Book 767, Page 156; R. Book 1029, Page 227; R. Book 1046, Page 140; R. Book 1123, Page 571; Instrument Nos. 2003-06837, 2003-07498, and 2003-07511.

Appellees' deed does not require them to become part of the HOA but indicates that the maintenance on the roadway will be maintained by Wag-Myr [Woodlands, Inc. "until such time as a Homeowners Association is organized and responsibility for road maintenance transferred to the Homeowners Association."[5]] That statement is not contained in any of the non-Hayes [Appellees' d]eeds.

Trial Ct. Op., 7/14/17, at 2-4 (citations omitted).

After forming as an HOA in 2013, Appellant began to charge a yearly fee of $300 to its members. The fees were used to maintain and repair the only common areas in the HOA, which are Wag-Myr Lane and a gate installed on the roadway in 2004. N.T., 5/24/17, at 89; Compl., 7/26/16, at 12-13. Appellees were made aware of the $300 per year assessment fee via hand-delivered letters dated April 17, 2014, and February 26, 2015, and a mailed letter dated February 5, 2016. *See* Appellees' Exs. 31, 36, 43.

Appellant initiated this action by filing a complaint on July 26, 2016, asserting that even though Appellees were not members of the HOA, they were required to pay the HOA's entire yearly assessment fee of $300 per year plus interest for the years 2014, 2015, and 2016. Appellant brought its claim for HOA fees on a common law right to recover for maintenance costs for Wag-Myr Lane based upon the easement language in each of the Appellees' deeds.[6]

---

[5] *See* Clinton Cty. Instrument No. 2003-07511.

[6] Appellant specifically indicated in the Complaint that it was not asserting that Appellees were obligated to become members of the HOA. Compl., 7/26/16, at 12.

The non-Hayes Appellees filed an answer to the complaint, denying liability because the HOA was formed after they purchased their properties and the HOA bylaws did not affect them. **See** Answer to Compl., 8/19/16, at 3-4 (unpaginated). The Hayes Appellees did not file an answer. Appellant did not file a motion for default or summary judgment.

Thereafter, the non-Hayes Appellees filed a motion for judgment on the pleadings or for summary judgment. At the January 26, 2017 argument, counsel for the non-Hayes Appellees conceded that they had a duty to pay for the maintenance of Wag-Myr Lane "[f]or their section." N.T., 1/26/17, at 10; **see also id.** at 6-7. The trial court denied the non-Hayes motion, indicating that "all [non-Hayes Appellees] have agreed that there is a common law obligation on behalf of [them] to pay some monies to maintain a right-of-way." Order, 1/27/17, at 2 (unpaginated).

On April 20, 2017, Appellant filed an amended complaint, seeking that the Hayes Appellees pay the full assessment fee of $300 per year as assessed and that the non-Hayes Appellees pay an undefined "proportionate share" to maintain the road. Am. Compl., 4/20/17, at 18. The non-Hayes Appellees filed an answer to the amended complaint, in which they denied liability for assessments on the basis that their properties were not part of a planned residential development. **See** Answer to First Am. Compl., 4/19/17, at 4, 7

(unpaginated). The Hayes Appellees did not file an answer to the amended complaint.[7]

A non-jury trial proceeded on May 24, 2017, in which HOA members testified on behalf of Appellant, and several of the non-Hayes Appellees testified on their own behalf. The *pro se* Hayes Appellees were present but neither of them testified.[8]

Of relevance to this appeal, David Morgan, the HOA president, testified to the maintenance and repairs Wag-Myr Lane required, as well as to the fact that the HOA took ownership of the easement from the developer, Wag-Myr

---

[7] In their appellate brief, the non-Hayes Appellees refer to a suit filed in Magisterial District Court prior to the instant action, in which Appellant sought "back assessments of three hundred dollars ($300.00) per year dating from the formation of the [HOA]." Non-Hayes Appellees' Brief at 1. The magisterial district judge apparently ruled in favor of Appellees and dismissed Appellant's action. *See id.* The record does not reflect any such ruling. Despite the magisterial district court seemingly ruling in their favor, neither the non-Hayes Appellees nor the Hayes Appellees have raised the defense of *res judicata* in their answers. Accordingly, although we lack knowledge of the details of that suit, assuming such a defense applied, they presumably waived this defense. *See Hopewell Estates, Inc. v. Kent*, 646 A.2d 1192, 1194 (Pa. Super. 1994) ("*Res judicata* [is an] affirmative defense[] which must be pleaded in an answer as new matter. A defense not so raised is waived." (citations omitted)); *see also A.C. Elfman & Sons, Inc. v. Clime*, 513 A.2d 488, 490 (Pa. Super. 1986) (noting that "where the doctrine of *res judicata* is otherwise applicable, its invocation will not be precluded or impaired because the prior judgment was entered in an action before a district justice").

[8] The Hayes Appellees were unrepresented at trial but have retained counsel for this appeal. At trial, the Hayes Appellees participated by asking cross-examination questions of the various witnesses.

Woodlands, Inc.[9] N.T., 5/24/17, at 18. Mr. Morgan indicated the cost of repairs to maintain Wag-Myr Lane completed by contractors during the period from 2014 through 2016. *Id.* at 20, 26; *see also* Appellant's Ex. 2 (outlining expenses of the HOA for road and gate maintenance from 2014 through 2016); Appellant's Ex. 5 (providing calculations supporting various measures to apportion the cost of maintaining the right-of-way based on the actual cost of repairs and electricity). Mr. Morgan also indicated that electricity for the gate had to be paid for on a yearly basis and that he and other HOA members had completed trimming and some repairs on the road to save money. N.T., 5/24/17, at 19-20.

An HOA member, Joseph Messinger, also testified on behalf of Appellant. Mr. Messinger indicated that Appellees were observed using Wag-Myr Lane beyond the length of their easement to go deeper into the development. *Id.* at 58. Non-Hayes Appellees' counsel stipulated that the non-Hayes Appellees used Wag-Myr Lane to visit with other Appellees or HOA members. *Id.* at 59.

Several non-Hayes Appellees testified that they maintained their portions of Wag-Myr Lane. *See id.* at 69 (testimony of John Guiswite), 101, 104 (testimony of Jeffrey Corson). Many of the Appellees testified that they plowed their sections of the road when it snowed. *See id.* at 70-71 (testimony of John Guiswite), 79 (testimony of Thomas Jeffries), 95-96 (testimony of

---

[9] We state the facts in the light most favorable to the verdict-winner. *Wilson v. Transport Ins. Co.*, 889 A.2d 563, 568 (Pa. Super. 2005).

Gayle Phillips), 99-100 (testimony of Jeffrey Corson), 107-08 (testimony of Ronnie DeWalt). Additionally, Appellee Ronnie DeWalt testified regarding installation of the gate at the entrance to Wag-Myr Lane. Other than requiring Appellees to purchase a "clicker" to open the gate, the developer promised that it would maintain and pay for the gate and that Mr. DeWalt and the other Appellees "[would not] have to do anything but [purchase and use the 'clickers' to open the gate.]" *Id.* at 107.

As to the nature of the planned community, Appellee Judy Heimbach testified that there were no common areas such as ponds, lakes, or anything other than the road in the Wag-Myr development. *Id.* at 89. Appellee Gayle Phillips indicated that he was never informed that a large residential development would be constructed in the area. *Id.* at 96. Likewise, Appellee Jeffrey Corson indicated that he was unaware of any planned residential development in the area when he purchased his land. *Id.* at 99.

At the conclusion of the non-jury trial, the trial court ordered the represented parties to submit proposed findings of fact and conclusions of law and permitted the Hayes Appellees to file any documents they deemed relevant within thirty days. Appellant and the non-Hayes Appellees submitted proposed findings of fact and conclusions of law, and the Hayes Appellees submitted a portion of the sales agreement for their property, which included a clause that the seller would remain responsible for maintaining the roadway. *See* Hayes Correspondence, 6/9/17.

Upon consideration of the parties' submissions, the trial court entered an order and opinion in favor of all Appellees, noting that because the court "[was] unable to determine that [Appellees] are owners of property within the [Wag-Myr] subdivision," they could not be assessed by the HOA. Trial Ct. Op., 7/14/17, at 13. The trial court further noted that the non-Hayes Appellees

> argue that there was no subdivision or planned community. Specifically, clearly when [Appellees] Phillips purchased the Phillips property in 1990, [Appellees] Phillips were purchasing a parcel of land having no clue whether a planned community development would occur past that property. This is similar to the purchases of [Appellees] Jeffries, Corson and McHale, DeWalts, Holman (now Heimbach and Stearns) and Guiswites.

*Id.* at 11. On this basis, and because a "subdivision map indicating where the subdivision begins and when it was laid out" was not provided at trial, the trial court ruled in favor of the non-Hayes Appellees. *Id.* at 12.

Appellant filed a post-trial motion, arguing that the trial court erred in determining that Appellees' obligation to pay for road maintenance turned on whether a subdivision plan existed or whether they were within a planned subdivision. *See* Mot. for Post-Trial Relief, 7/21/17, at 1-2 (unpaginated). Appellant sought judgment notwithstanding the verdict or, in the alternative, a new trial. *Id.* at 3. The trial court denied the post-trial motion on July 25, 2017.[10]

_____

[10] We note that Appellant did not request a directed verdict orally or in writing at the close of evidence at trial. Ordinarily, to preserve the right to request judgment notwithstanding the verdict (JNOV), a party must first request a binding charge to the jury or move for a directed verdict or compulsory non-

Appellant filed a timely notice of appeal and court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court complied with Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

1. Whether jurisdiction of this matter is properly vested in the Superior Court, rather than the Commonwealth Court.[11]

2. (With respect to all Appellees): Whether the court below erred in determining that the status of properties as part of a subdivision was relevant to a determination of the liability of those properties at common law for maintenance of a shared easement.

3. (With respect to Appellees Anthony and Meredith Hayes): Whether the court below erred in determining that the status of a property as part of a subdivision was relevant to a determination of the liability of that property for assessment costs for maintenance of a right-of-way pursuant to language in the deed of record for that property.

_____

suit. ***Phelps v. Caperoon***, 190 A.3d 1230 (Pa. Super. 2018) (citation omitted). A motion for a directed verdict is appropriate even in the non-jury trial context. ***Id.*** at 1247. Here, despite Appellant's failure to move for a directed verdict or otherwise preserve its right to seek judgment notwithstanding the verdict, the trial court did not find waiver and instead addressed the issue. Accordingly, we decline to find waiver. ***See Capital Care Corp. v. Hunt***, 847 A.2d 75, 84 (Pa. Super. 2004) (declining to find waiver where a party failed to move for a directed verdict, sought judgment notwithstanding the verdict in a post-trial motion, and the trial court addressed the claim as presented in the post-trial motion).

[11] This jurisdictional issue arose on appeal. This Court issued a rule to show cause on September 11, 2017, requiring Appellant to respond regarding why this appeal should not be transferred to the Commonwealth Court. Appellant filed a timely response, and this Court issued an order on September 27, 2017, discharging the rule to show cause and deferring the jurisdictional issue for this panel's consideration.

Appellant's Brief, at 1-2.

In its first issue, Appellant asserts that a transfer of this appeal to the Commonwealth Court would be improper. *Id.* at 6. Appellant argues that, as an unincorporated association, it is not subject to the exclusive grant of jurisdiction to the Commonwealth Court that is contained in 42 Pa.C.S. § 762(a)(5).[12] *Id.* at 6-7.

Additionally, Appellant contends that the Commonwealth Court lacks jurisdiction over this matter because its theory of recovery "is not based upon its status as a homeowners' association, but rather upon the duty of beneficiaries of a common law easement to contribute to the maintenance thereof." *Id.* at 7-8. (citing *Reed v. Allegheny Cty.*, 199 A. 187 (Pa. 1938); *Borgel v. Hoffman*, 280 A.2d 608, 610 (Pa. Super. 1971) (*en banc*)). Further, as to the Hayes Appellees, Appellant's "theory of recovery is based upon [the Hayes Appellees'] obligation to pay road maintenance assessments because of the noticing language in their deed." *Id.* at 8 (citing *Meadow Run & Mountain Lake Park Ass'n v. Berkel*, 598 A.2d 1024, 1025 (Pa. Super. 1991)).

By statute, this Court has jurisdiction regarding appeals from final orders of the courts of common pleas, except when jurisdiction is vested in the Supreme Court or the Commonwealth Court. 42 Pa.C.S. § 742. The jurisdiction of the Commonwealth Court regarding appeals from final orders

---

[12] Section 762(a)(5) is reproduced below.

of the common pleas courts is limited by statute. 42 Pa.C.S. § 762. Of relevance to this appeal, the Commonwealth Court has "exclusive jurisdiction of appeals from final orders of the courts of common pleas" in

> (i) All actions or proceedings relating to corporations not-for-profit arising under Title 15 (relating to corporations and unincorporated associations) or where is drawn in question the application, interpretation or enforcement of any provision of the Constitution, treaties or laws of the United States, or the Constitution of Pennsylvania or any statute, regulating in any such case the corporate affairs of any corporation not-for-profit subject to Title 15 or the affairs of the members, security holders, directors, officers, employees or agents thereof, as such.
>
> (ii) All actions or proceedings otherwise involving the corporate affairs of any corporation not-for-profit subject to Title 15 or the affairs of the members, security holders, directors, officers, or employees or agents thereof, as such.

42 Pa.C.S. § 762(a)(5).

Section 762(a)(5) provides for limited jurisdiction of the Commonwealth Court for certain actions involving "corporations not-for-profit." A "corporation not-for-profit" is defined as "[a] domestic or foreign corporation not incorporated for a purpose or purposes involving pecuniary profit, incidental or otherwise, whether or not it is a cooperative corporation." 15 Pa.C.S. § 102.

Instantly, Appellant correctly notes that as an unincorporated association, it is not a "corporation not-for-profit." Thus, Section 762(a)(5) does not vest exclusive jurisdiction over this appeal in the Commonwealth Court. Moreover, none of the Appellees has objected to the Superior Court retaining jurisdiction. *See Benner v. Silvis*, 950 A.2d 990, 993 (Pa. Super.

2008) (indicating that although, as an eminent domain matter, the appeal was within the exclusive jurisdiction of the Commonwealth Court, this Court retained jurisdiction since neither party objected). Accordingly, we have proper jurisdiction over this appeal.

We address Appellant's remaining issues in terms of the non-Hayes Appellees followed by the Hayes Appellees.

Appellant asserts that the trial court erred in finding that the non-Hayes Appellees were not liable for expenses to maintain the right-of-way based upon "the [lack of] existence of a subdivision plan." Appellant's Brief at 8. Appellant contends that the non-Hayes Appellees "are liable at common law for a proportionate share of the costs of maintenance of a shared easement" because they "have notice [of the easement] in their respective deeds." *Id.* at 11. In support, Appellant relies on ***Spinnler Point Colony Ass'n, Inc. v. Nash***, 689 A.2d 1026 (Pa. Cmwlth. 1997).

Appellant further argues that all non-Hayes Appellees conceded at summary judgment that they are liable for maintenance of "their sections" of Wag-Myr Lane. Appellant argues that this concession constitutes the law of the case. Appellant's Brief at 8.

The non-Hayes Appellees assert that although they are "supposed to maintain the right of way[,] they have no obligation to pay any assessments to someone whose interest in the property was created well after the creation of their easement." Non-Hayes Appellees' Brief at 2. Accordingly, rather than pay the HOA a "formulaic" assessment, the non-Hayes Appellees assert that

- 14 -

they are responsible only for the maintenance and repair of the portion of Wag-Myr Lane that directly abuts their land. ***Id.*** at 8 (citing ***Borgel***, 280 A.2d at 610). The non-Hayes Appellees also contend that they cannot be required to pay the HOA an assessment because their deeds do not contain a covenant requiring the owner to pay his proportionate part of the expense of maintaining Wag-Myr Lane. ***Id.*** at 9 (citing ***Mscisz v. Russell***, 487 A.2d 839, 841 (Pa. Super. 1984)). The non-Hayes Appellees also cite to ***Deep Meadows Civic Ass'n v. Trusello***, 140 A.3d 60 (Pa. Cmwlth. 2016), in support of their position.

Our standard of review is as follows:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

> Our review of the trial court's denial of a new trial is limited to determining whether the trial court acted capriciously, abused its discretion, or committed an error of law that controlled the outcome of the case. In making this determination, we must consider whether, viewing the evidence in the light most favorable to the verdict winner, a new trial would produce a different verdict.

Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed.

*Grossi v. Travelers Personal Ins. Co.*, 79 A.3d 1141, 1147-48 (Pa. Super. 2013) (citation omitted). "A trial court's construction of a deed is a question of law, which compels *de novo* review." *Russo v. Polidoro*, 176 A.3d 326, 329 (Pa. Super. 2017) (citation omitted).

Regarding easements, regardless of their location, "[o]rdinarily the owner of a servient estate is under no obligation to make repairs; the duty is upon the one who enjoys the easement to keep it in proper condition." *Reed*, 199 A. at 189. In *Borgel*, the Court resolved the tension between the general rule and the issue of liability under the factual circumstances of a driveway owned and used by multiple adjacent property owners:

> While we recognize the general rule, as already stated, regarding the obligation of a dominant tenant to keep in repair an easement which is used and enjoyed for the dominant estate alone, it must be recognized that this general rule is simply an application of the broader rule that the duty of repair should fall where reason, convenience, and equity require it to fall. Where, as in this case, an easement in a driveway is owned and utilized by many abutting property owners, it would be most unreasonable, inconvenient and inequitable to hold each dominant tenant liable for a defect in the driveway no matter how far removed from that dominant owner's property. It would be equally unreasonable, inconvenient and inequitable to hold only those dominant owners whose properties are close to the defect liable therefor, since we would then have to answer the question, "How close is close?" And, if we were to say that those dominant tenants making the most use of the driveway at the place of the defect should be liable therefor, we would be faced with difficult evidentiary issues as to amount of use and presented with the important legal question of how much use should impose liability. It is our conclusion that the most reasonable, expedient and equitable rule is to require each

- 16 -

of the owners to be responsible for the maintenance and repair of only that portion of the driveway abutting or located on his own land.

*Borgel*, 280 A.2d at 610. *Borgel*, however, did not involve a property association.

Where a property association exists, the "beneficial users of the common areas of [a] development[] are responsible for the cost of maintenance of such facilities." *Berkel*, 598 A.2d at 1027. Even when an individual's "chain of title makes no reference to a property owners['] association," the individual must pay his or her "proportionate share for repair, upkeep and maintenance" of the easements to which he or she has rights to enjoy in a residential development. *Spinnler Point*, 689 A.2d at 1028-29.

In *Spinnler Point*, which Appellant relies on for support, the homeowners' chain of title did not refer to a property owners' association. *Id.* at 1028. The homeowners argued that they were not obligated to join a property association that formed in their residential development or required to pay its annual assessments. *Id.* The homeowners' deed provided that they had the right to travel over property association roads and to access a lake. *Id.* at 1027. The Commonwealth Court held that even though the homeowners conceded liability for the assessments, they "[c]learly, pursuant to their deed, have the right to enjoy the easements. Therefore, [they] must pay the costs of maintenance." *Id.* at 1029. The Court summarized its holding as follows: "a property owner who purchases property in a private residential development who has the right to travel the development roads

and to access the waters of a lake is obligated to pay a proportionate share for repair, upkeep and maintenance of the development's roads, facilities and amenities." *Id.*

The non-Hayes Appellees rely on *Borgel*, in which a pedestrian fell and was injured on a driveway running between two rows of houses over which each of the owners of the houses had an easement. *Borgel*, 280 A.2d at 608-09. The pedestrian sued the owners of the property abutting the portion of the driveway where her injury occurred for negligence. *Id.* at 608. The owners sought to join several other nearby owners as additional defendants. *Id.* The additional defendants successfully moved for summary judgment on several grounds, including that "the supposed duty of the additional defendants to maintain and control the driveway arose from their Deeds; and that no such duty or obligation is expressed or implied in their Deeds." *Id.* at 609. The owners appealed and raised the following issue:

> Where the defendants own an easement over a driveway, a portion of which abuts or is located on their property, and a user contends negligence in their maintenance and repair of that portion of the driveway, are the other owners of properties abutting the driveway, who also enjoy an easement therein, responsible, either solely or jointly with the defendants, in the absence of any express covenant, for the repair and maintenance of that portion of the driveway so abutting or located on defendants' property?

*Id.* Based on the reasoning set forth above, the Court held that the additional defendants could be held liable because, as quoted *supra*, "the most reasonable, expedient and equitable rule is to require each of the owners to

be responsible for the maintenance and repair of only that portion of the driveway abutting or located on his own land." *Id.* at 610.

For further support, the non-Hayes Appellees point to **Mscisz**, another negligence case, in which a covenant in several homeowners' deeds imposed an "equal duty to maintain the private driveway" that served their properties by paying an equal share for its upkeep. **Mscisz**, 487 A.2d at 841.

In **Trusello**, on which the non-Hayes Appellees also rely, the Commonwealth Court affirmed the trial court's decision, following a bench trial, that the homeowner could not be assessed fees by an HOA for the maintenance of a common area, including an open space. **Trusello**, 140 A.3d at 69. The homeowner's deed contained no reference to an HOA, and he "had neither actual nor constructive notice that [his property] was subject to a homeowner's association." **Id.** at 68-69 (citation omitted). The homeowner's deed, however, did not include any right or privilege to use any common property. **Id.** at 68.

Instantly, as in **Spinnler Point**, the non-Hayes Appellees' deeds did not refer to an HOA and also included the right to the use of an easement.[13] As Appellant argues, this alone obligates the non-Hayes Appellees to pay a "proportionate share" of the maintenance costs for Wag-Myr Lane. **Spinnler Point**, 689 A.2d at 1029; **see also Reed**, 199 A. at 189. Pursuant to the common law in **Borgel** and **Reed**, whether the Appellees knew they were

_____

[13] We note that the deeds do not mention a gate.

- 19 -

buying property that would later be part of a residential development is not dispositive, because under the facts of this case, their properties undisputedly benefit from the easement. *See Borgel*, 280 A.2d at 610; *Reed*, 199 A. at 189.

Further, the facts of *Trusello* are distinguishable from the non-Hayes Appellees' situation because in *Trusello* the homeowner's deed did not include an easement permitting him the privilege of using any common property. *See Trusello*, 140 A.3d at 68.

Moreover, the non-Hayes Appellees conceded at the summary judgment stage of the proceedings that they owed money to maintain "their sections" of Wag-Myr Lane.[14] *See* N.T., 1/26/17, at 6-7, 10; Order, 1/27/17, at 2. Thus, for these reasons, the trial court erred.[15]

The non-Hayes Appellees object to making payment for "their sections" **to** the HOA. As such, we note that the HOA is the successor in interest to Wag-Myr Woodlands, Inc., the original owner of the property and the grantor of the easement in question. *See* N.T. 5/24/17, at 18; *see generally*

---

[14] While Appellant asserts that counsel's statement at the summary judgment stage was binding on the trial court under the law of the case doctrine, we note that counsel's statement was an admission. It is well-settled that counsel may bind a client by making an admission. *Cf. Lee v. Safeguard Mut. Ins. Co.*, 549 A.2d 927, 934 (Pa. Super. 1988) (concluding counsel bound his client with an admission during trial).

[15] It is undisputed that the deeds in this matter do not contain a clause indicating an "equal duty" to maintain Wag-Myr Lane. However, the lack of such a clause has no bearing on whether the non-Hayes Appellees owe a "proportionate share" for road maintenance. *See Borgel*, 280 A.2d at 610.

*Birchwood Lakes Cmty. Ass'n, Inc. v. Comis*, 442 A.2d 304, 306 (Pa. Super. 1982) (referring to the property owners' association that performed the "services essential to the maintenance of the community" as the "successor in interest to the developer"). Accordingly, the HOA is the servient owner to which Appellees are required to pay their "proportionate share" for the maintenance of Wag-Myr Lane.

Thus, even viewing the record in the light most favorable to the verdict-winner, *Grossi*, 79 A.3d at 1147-48, we conclude that the trial court erred, and we vacate the judgment. We order the trial court to enter judgment in favor of Appellant after the court, on remand, calculates a "proportionate share" of the Wag-Myr Lane maintenance costs for each of the non-Hayes Appellees. Such maintenance costs shall exclude gate costs, since the gate was not part of the easement granted within each deed.[16]

Finally, regarding the Hayes Appellees, Appellant asserts that the trial court erred in finding that they were liable for expenses to maintain the right-of-way based upon "the [lack of] existence of a subdivision plan." Appellant's Brief at 8. Appellant asserts that the Hayes Appellees "are subject to the same principle of common-law liability as the other [Appellees] on the basis that their property benefits from a shared easement[. T]hey are also liable

---

[16] *Cf. Kelso Woods Ass'n, Inc. v. Swanson*, 753 A.2d 894, 898 (Pa. Cmwlth. 2000) (upholding trial court's determination that where a lot outside an association received its water through the association and water comprised approximately thirty percent of the association's expenses, it was inequitable to charge a fee of approximately ninety percent of the association's base member fee, but a charge of one-half the base rate was equitable).

on the additional basis that their deed expressly mentions the formation of a homeowners' association to maintain the right-of-way." *Id.* at 21.

The trial court noted that Hayes Appellees's deed "do[es] not reflect that [this parcel was] part of any subdivision." Trial Ct. Op, 7/14/17, at 9. On this basis, and because a "subdivision map indicating where the subdivision begins and when it was laid out" was not provided at trial, the trial court ruled in favor of the Hayes Appellees. *Id.* at 12.

The Hayes Appellees argue that their deed addressed road maintenance and stated that "Appellant, not Appellee Hayes, would be fully responsible for it." Hayes Appellees' Brief at 4. The Hayes Appellees also assert that there was "no clear notice of any obligation to join [the HOA] or share in its assessments." *Id.*

We note the facts of *Berkel* in reference to the Hayes Appellees. Berkel was a lot owner in a development with a property owners' association that initially "relied upon the voluntary contributions of the lot owners for the maintenance expenses of the common areas." *Berkel*, 598 A.2d at 1025. The property owners' association eventually instituted an annual assessment for all lot owners for their share of the association's dams and road. *Id.* Berkel did not pay the assessment and contended that the association lacked the authority to require payment of any assessment because, while his deed referenced the association, it did not expressly authorize assessments:

> In the event of the formation or incorporation of an association of the lot owners on above mentioned plot of Mountain and Meadow Run Lakes, the occupants of the above described premises shall

be bound by such rules and regulations concerning the use of Mountain and Meadow Run Lakes as to boating, bathing, ice skating and fishing, as may be duly formulated and adopted by such association or incorporation.

*Id.* at 1025-26 (quoting deed). Following an appeal from a bench trial and verdict in the association's favor, this Court held that because Berkel was a beneficial user of the common areas of the development, including the dams and roads,

absent an express agreement prohibiting assessments, when an association of property owners in a private development is referred to in the chain of title and has the authority to regulate each property owner's use of common facilities, inherent in that authority is the ability to impose reasonable assessments on the property owners to fund the maintenance of those facilities.

*Id.* at 1027.

Instantly, the pertinent language of the Hayes deed follows:

16. Covenant regarding private road:

A. Access to the hereinabove described premises is provided by a private road;

B. Access is not subject to municipal maintenance; and

C. Neither the Planning Commission nor the municipality shall be responsible for any road construction, maintenance, or improvement at any time in the future.

All access to the premises herein conveyed is provided by a fifty (50) foot private road (Wag-Myr Lane) and that access is not subject to municipal maintenance. The Grantor as developer shall be responsible for road maintenance until such time as a Homeowners Association is organized and responsibility for road maintenance transferred to the Homeowners Association.

Deed Between Wag-Myr Woodlands, Inc. and Anthony J. Hayes and Meredith L. Hayes, 10/27/03, at ¶ 16.

- 23 -

Here, similar to the lot owner and deed language in **Berkel**, the Hayes Appellees were put on notice that an HOA would eventually come into existence. **See Berkel**, 598 A.2d at 1027. Because the Hayes Appellees had notice of a future HOA and because the HOA has the authority to impose assessments, the Hayes Appellees are obligated to pay the assessed maintenance fees for Wag-Myr Lane. **See id.** Therefore, no calculation of a proportionate share is required for the Hayes Appellees since they are required to pay the maintenance fees as assessed.

Judgment vacated. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/19/2018