J-A27019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHRISTOPHER AND EVA CAPUTO | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NORTH POINTE COMMUNITY | : | No. 964 EDA 2021 |
| ASSOCIATION | : | |

Appeal from the Judgment Entered April 19, 2021
In the Court of Common Pleas of Bucks County Civil Division
at No(s): 2012-02424

BEFORE: PANELLA, P.J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.: **FILED JANUARY 4, 2022**

In this easement matter, Christopher and Eva Caputo (Appellants) appeal from the judgment[1] entered, following a bench trial, in the Bucks County Court of Common Pleas, in favor of North Pointe Community Association (North Pointe). The trial court found that under the terms of an express easement, North Pointe was not required to bring a bridge "into a state of 'good repair,'" but merely to maintain a bridge that was already in "good repair." Trial Ct. Op., 7/12/21, at 6-7. After careful review, we reverse.

---

[1] Appellants purported to appeal from the April 19, 2021, **order**, which denied their post-trial motion. This order also entered judgment in favor of North Pointe Community Association. Because the appeal lies properly from the **judgment**, we have amended the caption accordingly. *See **Guiser v. Sieber**, 237 A.3d 496, 500 (Pa. Super. 2020) (an appeal lies from the entry of judgment).

## I. Facts & Procedural History

The trial court made the following findings of facts: in 1999, Windmere Associates, LP (the Developer) bought a 104-acre parcel, previously known as the Marshall tract, in Solebury Township (Township), Bucks County. Trial Ct. Findings of Fact & Conclusions of Law (Findings of Fact), 1/15/21, at 1.[2] The Developer sought Township approval to construct residential homes; the "Township agreed . . . in exchange for several obligations[.]" *Id.* at 1-2. First, the Developer was to "carve[ ] out a ten-acre parcel," known as the Farmstead — which is now owned by Appellants — and a 102-acre parcel, which was dedicated to the Township and known as the Open Space.[3] *See id.* at 3-4.

The trial court summarized:

6. To access both the Open Space and the Farmstead, pedestrians and vehicles used a "significantly deteriorated" bridge (the "Bridge") located on the Farmstead property.

7. In 1999, the [Township] became aware of the Bridge's deteriorated nature prior to final approval of the Developer's project.

---

[2] For ease in identifying the trial court's January 15, 2021, findings of facts, we note the heading at the top of the first page states "Introduction."

[3] In its findings of fact, the trial court stated the Developer dedicated the Open Space to the Township in **2001**. Findings of Fact at 4. However, we note the Developer's "Declaration of Access Easement," which had been executed in July of **2000**, stated the Open Space had already been dedicated to the Township, and the Township "is the owner" of the Open Space. Declaration of Access Easement, 7/13/00, at 1. This discrepancy does not affect our disposition.

8. As a condition to final approval and dedication, the [Township] required the Developer to bring the Bridge to "a useful and functional standard of repair[.]"

*Id.*

On July 13, 2000, the Developer executed a three-page "Declaration of Access Easement" (Declaration of Easement), which declared an easement over the Bridge for: (1) Township's emergency vehicles; (2) pedestrian access to the Open Space, for the benefit of the Township; and (3) "access for the benefit of [North Pointe] enabling its employees and agents to perform all necessary repairs and maintenance to the Bridge to the extent required pursuant to the terms of" a "Declaration of Covenants, Easements, Conditions and Restrictions of North Pointe Planned Community" (Declaration of Covenants), which would be executed the following year. *See* Findings of Fact at 3. The Declaration of Easement further provided, "[The Developer,] its successors and assigns shall keep the Easement Area open, passable and unimpaired at all times." Declaration of Easement at 2.

In February of 2001, the Developer, together with North Pointe, executed the Declaration of Covenants (which was referenced in the July 2000 Declaration of Easement).[4] This document stated, "[North Pointe] shall . . .

---

[4] Appellants averred North Pointe is governed by the Declaration of Covenants, which is recorded in the Bucks County Office of the Recorder of Deeds. Appellants' Complaint, 3/15/12, at 10.

be responsible for maintaining and keeping in good repair the bridge which is located on . . . the "Farmstead[.]" Declaration of Covenants, 2/20/01, at 13.

As stated above, the Developer dedicated the Open Space to the Township. In 2001, the Developer sold the Farmstead to Jim Westcott and Robert Evans —Appellants' predecessor in ownership. *See* Findings of Fact at 4.

The trial court further made these findings of fact: in November 2004 and April 2006, the Township reminded and requested, respectively, the Developer to make necessary repairs to the Bridge. However, "the Developer has never repaired or maintained the Bridge," and "[s]imilarly, [the] Township has declined to take affirmative steps to repair the Bridge." Findings of Fact at 4.

20. In 2006, Robert Evans and Jim Westcott hired contractors and vendors that caused "significant damage" to the Bridge.

21. On September 1, 2006, [the Township] sent Evans and Westcott a letter demanding [they] repair [the] damage the contractors and vendors caused to the Bridge.

22. Robert Evans and Jim Westcott never made the repairs Solebury Township requested.

23. In December 2006, Robert Evans and Jim Westcott sold the Farmstead property to [Appellants].

24. As owners of the Farmstead property, [Appellants] made alterations to the Bridge that further deteriorated the Bridge.

25. During 2013, Solebury Township relinquished its pedestrian access easement over the Farmstead property as part of a lawsuit settlement with [Appellants], leaving only the easements for

Solebury Township emergency vehicles and [North Pointe] for potential repairs.

*Id.* at 4 (footnotes and citations omitted).

## II. Complaint, Verdict, & Trial Court's Findings of Fact

On March 15, 2012, Appellants filed the underlying complaint against North Pointe, pleading breach of contract and negligence. Appellants averred: the Bridge was the sole means of access to their residence; the Bridge was in need of repair; they have "placed temporary measures in order to provide continuous access to [their] home;" however the damage to the Bridge "is so severe that it must be replaced." Appellants' Complaint at 3. Appellants claimed North Pointe and their predecessors have failed to maintain or repair the Bridge, as they were required to do under the Declaration of Covenants. Appellants thus requested: (1) specific performance of Norte Pointe carrying out the repairs; (2) North Pointe's funding an escrow account with sufficient funds to repair and maintain the Bridge; (3) reimbursement for costs and expenses incurred for past repair and maintenance; and (4) costs and additional relief as deemed appropriate by the trial court.

On April 3, 2017, Appellants filed a motion for summary judgment, which the trial court denied. Beginning September 2, 2020, the trial court conducted a two-day non-jury trial. On November 19th, the court filed a written verdict in favor of North Pointe and against Appellants. The verdict did not include any further information, but explained: "Owing to COVID-19 developments and a related staffing shortage, this Court will release a Findings

of Fact and Conclusions of law within [20] days of this Verdict." Verdict. On December 8th, the court issued an order, explaining it would require another 20 days to file findings of fact and conclusions of law.

On January 15, 2021, the trial court issued its findings of fact. It set forth the history of the Developer's developing the property, and the provisions of the Declaration of Easement and Declaration of Covenants, as we have set forth above. Findings of Fact at 2-5. The court summarized the parties' arguments, and found in favor of North Pointe, concluding:

> According to [Appellants], the Developer . . . transferred [a] duty [to North Pointe to bring the Bridge to a state of good repair. North Pointe] counters that the Developer only transferred the responsibility to **keep** the Bridge in good repair, not the responsibility to **place** the Bridge in a state of good repair.
>
> Although this Court finds the Developer did assign some repair responsibilities to [North Pointe], the Developer did not assign the initial duty to place the Bridge in a state of good repair. As the Bridge has not been in a state of good repair since the Developer granted the easement, [North Pointe] has no obligation to repair the Bridge. [Appellants'] negligence claim similarly fails because [North Pointe] owed no duty to [Appellants] to fix the Bridge.

Findings of Fact at 2.

On January 25, 2021, Appellants filed a post-trial motion, which the trial court denied on April 19, 2021. Appellants filed a notice of appeal on May 5th and, subsequently, a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

**III. Timeliness of Appeal**

Preliminarily, we consider the timeliness of Appellants' notice of appeal. "[I]f the appeal is late, we have no jurisdiction to entertain it." ***In re Estate of Allen***, 960 A.2d 470, 471 (Pa. Super. 2008). Pennsylvania Rule of Civil Procedure 227.1(c)(1) provides that "[p]ost-trial motions shall be filed within ten days after . . . verdict." Pa.R.C.P. 227.1(c)(1). ***See also Chalkey v. Roush***, 805 A.2d 491, 494 (Pa. 2002) ("Grounds not specified by a party in post-trial motions pursuant to Rule 227.1 shall be deemed waived on appellate review."). Here, the trial court entered its verdict on November 19, 2020, but Appellants did not file their post-trial motion until almost two months later, on January 15, 2021.

On July 14, 2021, this Court issued a *per curiam* rule on Appellants to show cause why this appeal should not be dismissed for failure to preserve any issue for appellate review. In their response, Appellants pointed out: the trial court's July 19, 2021, written verdict specified that due to the COVID-19 pandemic, it would issue findings of fact and conclusions of law within 20 days. Appellants averred that without the trial court's reasoning, they could not prepare a post-trial motion. Appellants then argued that when the trial court issued its finding of fact on January 15, 2020, they filed a post-trial motion within 10 days thereof. This Court discharged the rule to show cause, but advised the parties the merits panel may revisit this issue.

On appeal, North Pointe avers Appellants' post-trial motion was untimely.[5] It argues the trial court entered judgment on November 19, 2020, and it is irrelevant that the court did not issue its findings of fact and conclusions of law until January. North Pointe's Brief at 27-28. We conclude the appeal is timely.

This Court has stated, "The rule requiring that post-trial motions be filed within ten days after notice of filing is a procedural rule; it is not jurisdictional. A trial court has broad discretion to entertain untimely procedural motions." **Wittig v. Carlacci**, 537 A.2d 29, 30 (Pa. Super. 1988). "[A]n issue presented to a trial court in untimely post-verdict motions is considered preserved as long as the trial court chooses to address the claim presented in the untimely motion." **Dougherty v. Edward J. Meloney, Inc.**, 661 A.2d 375, 389 (Pa. Super. 1995).

Here, the trial court's November 19, 2020, verdict was entered on the trial docket as an "order." Trial Docket at 4. Subsequently, the trial court twice cited difficulties related to the COVID-19 pandemic and specified it would need additional time to issue findings of fact and conclusions of law. Appellants have explained they could not file a post-trial motion without knowing the court's reasoning. Rather than suggesting waiver, the trial court

_____

[5] As we discuss **infra**, North Pointe further argues Appellants have waived their issues for: failure to first seek the requested relief before the trial court; and failure to preserve their issue in their Pa.R.A.P. 1925(b) statement.

denied the post-trial motion and set forth its reasons in a Pa.R.A.P. 1925(a) opinion. Under these circumstances, we decline to hold Appellants have waived all issues for an untimely post-trial motion. *See Dougherty*, 661 A.2d at 389; *Wittig*, 537 A.2d at 30.

## IV. Statement of Questions Involved & Standard of Review

At this juncture, we set forth Appellants' issues on appeal:

[1.] Where the [Declaration of Easement] and [Declaration of Covenants] required [the Developer] and "**its successors and assigns**" "to keep the Easement Area open, passable, and unimpaired at all times", and to "maintain[ ] and keep [ ] in good repair" the "Farmstead Bridge" located on [Appellants'] property . . . and where [North Pointe] was the admitted "successor and assign", did the trial court err, as a matter of law, when it **denied** [Appellants'] requested specific performance of these obligations and reaffirmation of [North Pointe's] past, present and future obligations in [Declaration of Easement] and [Declaration of Covenants] to repair and maintain the Easement Area and Farmstead Bridge?

[2.] Did the trial court err, as a matter of law, in refusing to enforce [North Pointe's] obligations in the [Declaration of Easement] and [Declaration of Covenants] to repair and maintain the Easement Area and Farmstead Bridge, because the trial court concluded that the Farmstead Bridge "was in a state of disrepair at the time of [Declaration of Covenants]" and concluding that "the responsibility to repair does not lie with [North Pointe]" where [North Pointe] failed to pursue its predecessor, [the Developer], for remedies (if the Farmstead Bridge was indeed in a state of disrepair), as [North Pointe] was statutorily entitled and obligated to do?

Appellants' Brief at 5-6 (unpaginated).[6]

We note the standard of review:

Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of fact of the trial judge must be given the same weight and effect on appeal as the verdict of a jury. We consider the evidence in a light most favorable to the verdict winner. We will reverse the trial court only if its findings of fact are not supported by competent evidence in the record or if its findings are premised on an error of law. However, [where] the issue . . . concerns a question of law, our scope of review is plenary.

**Stephan v. Waldron Elec. Heating & Cooling LLC**, 100 A.3d 660, 664 (Pa. Super. 2014) (citation omitted).

In Appellants' first issue, they aver the trial court misinterpreted the terms of the easement. This Court has explained:

It is well-established that the same rules of construction that apply to contracts are applicable in the construction of easements. . . . In ascertaining the scope of an easement, the intention of the parties must be advanced. Such intention [of the parties] is determined by a fair interpretation and construction of the grant and may be shown by the words employed construed with reference to the attending circumstances known to the parties at the time the grant was made.

**McNaughton Props., LP v. Barr**, 981 A.2d 222, 227 (Pa. Super. 2009) (citation omitted).

---

[6] We note the first two pages of Appellants' brief, consisting of the table of contents and table of authorities, are enumerated "i" and "ii." We consider the next page, stating the "Statement of Jurisdiction," as page "1."

Whether a trial court properly interpreted a contract is a question of law and our scope of review is plenary. As with any contract the rights conferred by the grant of an express easement must be ascertained solely from the language of the deed, provided that the deed language is unambiguous. . . .

*PARC Holdings, Inc. v. Killian*, 785 A.2d 106, 112 (Pa. Super. 2001) (citations omitted).

## V. Waiver

Before turning to the merits of Appellants' first issue, we consider North Pointe's argument that it is waived for failure to preserve it before the trial court. North Pointe contends that the relief Appellants seek on appeal — vacatur of the judgment and entry of judgment in their favor — is a request for judgment notwithstanding the verdict. However, North Pointe reasons, Appellants did not move for a directed verdict before the trial court, and have therefore waived any claim that judgment be entered for them. North Pointe's Brief at 25-26.

Appellants respond that in a **non-jury** trial, neither Pennsylvania Rule of Civil Procedure 226 (motion for directed verdict) nor 227.1 (post-trial relief) expressly requires a motion for post-trial relief include a motion for a directed verdict. Appellants' Reply Brief at 18. They cite the comment to Rule 226, which provides, "Unlike its statutory predecessor, [Rule 226(b)] contains no express requirement of the filing of a motion for directed verdict as a condition precedent for the filing of Motion for Post-Trial Relief." **See** Pa.R.C.P. 226, *comment*.

- 11 -

We consider the following. Rule 226(b) provides, "At the close of all the evidence, the trial judge may direct a verdict upon the oral or written motion of any party." Pa.R.C.P. 226(b). Rule 227.1(a) states that upon a party's written post-trial motion, the trial court may:

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) affirm, modify or change the decision; or

(5) enter any other appropriate order.

Pa.R.C.P. 227.1(a). However, under Subsection (b):

post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

(2) are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are deemed waived unless leave is granted upon cause shown to specify additional grounds.

Pa.R.C.P. 227.1(b).

In *Wag-Myr Woodlands Homeowners Assoc. by Morgan v. Guiswite*, 197 A.3d 1243, 1250 n.10 (Pa. Super. 2018), this Court stated:

We note that [the a]ppellant did not request a directed verdict orally or in writing at the close of evidence at trial. Ordinarily, to preserve the right to request judgment notwithstanding the verdict (JNOV), a party must first request a binding charge to the jury or move for a directed verdict or compulsory non-suit. *Phelps v. Caperoon*, 190 A.3d 1230 (Pa. Super. 2018) (citation

omitted). A motion for a directed verdict is appropriate even in the non-jury trial context. *Id.* at 1247.

Here, despite [the a]ppellant's failure to move for a directed verdict or otherwise preserve its right to seek judgment notwithstanding the verdict, the trial court did not find waiver and instead addressed the issue. Accordingly, we decline to find waiver. *See Capital Care Corp. v. Hunt*, 847 A.2d 75, 84 (Pa. Super. 2004) (declining to find waiver where a party failed to move for a directed verdict, sought judgment notwithstanding the verdict in a post-trial motion, and the trial court addressed the claim as presented in the post-trial motion).

*Wag-Myr Woodlands Homeowners Ass'n By Morgan v. Guiswite*, 197 A.3d 1243, 1250 n.10 (2018) (paragraph break added).

Here, as in *Wag-Myr Woodlands*, we decline to find waiver. Although Appellants did not specifically motion for a directed verdict, the trial court addressed the merits of their post-trial motion in its opinion. Furthermore, we note the post-trial motion clearly argued that the court erred in denying their request for declaratory relief, and in finding the Developer's failures to complete repairs to the Bridge eliminated North Pointe's responsibilities to make repairs. Appellants' Motion for Post-Trial Relief, 1/25/21, at 2, 5.

## VI. North Pointe's Obligations with Respect to the Bridge

We next address Appellants' claim that the court erred in interpreting the contractual documents. Appellants maintain the court correctly concluded that North Pointe bore the responsibility of maintaining and keeping the Bridge in good repair, but erred in finding North Pointe was not required to repair an already-damaged Bridge. Appellants allege the court disregarded the controlling documents, relevant law, and the fact that when the Declaration

of Covenant was executed, the Developer controlled North Pointe. Appellants maintain the court erred in creating a "legal exception" to North Pointe's obligations that was at odds with the Declaration of Easement and the law. Appellants' Brief at 17. They argue North Pointe is the Developer's successor and was thus required by the Declaration of Easement to "keep the Easement area open, passable, and unimpaired at all times." *Id.* at 11. Appellants challenge the court's conclusions that North Pointe's responsibilities presupposed that the Bridge was in good repair and, because it was in disrepair at the time of the Declaration of Covenant[7] and remained in disrepair, North Pointe never had the responsibility to repair it. Appellants argue instead that if the Bridge were in disrepair at the time of the Declaration of Covenant, North Pointe was not excused from fulfilling its obligations to Appellants, and North Pointe could seek a remedy from the Developer. Appellants claim the trial court left them "holding the bag" while granting North Pointe "a 'Get Out of Jail Free' decision." *Id.* at 26.

North Pointe responds the trial evidence supported the trial court's conclusion that it had the responsibility to "keep" the bridge in good repair, not bring it into good repair. North Pointe insists that a necessary condition precedent was not fulfilled by the Developer, and therefore North Pointe's obligation was not triggered. North Pointe claims the court's finding was also

_____

[7] Appellants dispute this conclusion.

supported by "English grammar," where Webster's Dictionary defines "maintain" as "to preserve or keep in a **given existing condition**, as of efficiency or good repair." North Pointe's Brief at 17. North Pointe further points out: (1) property owners have a duty to maintain their own property; (2) Appellants and prior owners of the Farmstead engaged in conduct with the intention of improving the Bridge, but ultimately harmed the Bridge; and (3) thus, Appellants seek equitable relief, but do not come to court with clean hands. After careful review, we conclude Appellants are entitled to relief.

Here, the trial court found the "crux" of this case to be the contrast in the relevant language between the Declaration of Easement and the Declaration of Covenants. Trial Ct. Op. at 6-7. The court first considered the Declaration of Easement, which provided the Developer, "its successors and assigns [to] keep the Easement Area open, passable and unimpaired at all times[.]" *Id.* at 6. The court found this language "suggests the Developer must maintain the Bridge in working state regardless of its conditions." *Id.* at 7. The court also found this document "served to assign . . . **some** of the Developer's duty to repair the Bridge to" North Pointe. *Id.* at 6.

The trial court then reviewed the Declaration of Covenants, which stated the North Pointe "shall . . . be responsible for maintaining and keeping in good repair the [B]ridge[.]" *See id.* at 6-7. The court found this provision "presupposes the Bridge is in 'good repair[,]'" and that North Pointe "has no responsibility to bring the significantly deteriorated bridge into a state of 'good

repair.'" *Id.* at 7, 8. The court reasoned that although "Township and other interested parties likely assumed the Developer would place the Bridge in a state of good repair before selling the Farmstead property[, t]he Developer's failure to perform does not suddenly shift the meaning of the assignment." *Id.*

Additionally, the trial court rejected Appellants' argument that North Pointe was the Developer's successor. Trial Ct. Op. at 8. The court reasoned: (1) Appellants presented "no evidence at trial proving [North Pointe] was a *de facto* successor of the Developer[;]" and (2) although North Ponte may be "something of a 'successor' of the Developer as to [North Pointe's] property, . . . the Developer spoke in the Easement Declaration as owner of the Farmstead property, not [North Pointe's] property." *Id.* Were the court "to assume the successor in interest to the property is the 'successor,' then [the court would find Appellants] are the Developer's successor, not" North Pointe. *Id.*

We disagree with the trial court's conclusion that North Pointe is not Developer's successor, for purposes of the Declaration of Easement. *See* Declaration of Easement at 2 ("[The Developer,] its successors and assigns shall keep the Easement Area open, passable and unimpaired at all times."). We disagree with its implicit finding that North Pointe's status, as the successor in ownership interest to the North Pointe development property, was not relevant or not material. *See* Trial Ct. Op. at 8. The trial court

- 16 -

reasoned the Developer was referring only to the owner of the Farmstead property, or dominant estate.[8]  *See id.* ("[T]he Developer spoke in the Easement Declaration as owner of the Farmstead property, not [North Pointe's] property.").  However, our review of the Declaration of Easement reveals no such distinction.

We note Paragraph 2 of the Declaration of Easement sets forth the users and uses of the easement over the Bridge: (1) emergency access for fire, ambulance, and police employees for the Township's benefit; (2) pedestrian access to the Open Space for the benefit of the Township; and (3) "access for the benefit of [**North Pointe**[9]] enabling its employees and agents to perform all necessary repairs and maintenance to the Bridge[.]"  Declaration of Easement at 2 (emphasis added).  This last passage specified it was North Pointe who would perform "all necessary repairs and maintenance to the Bridge."  *Id.*  The very next paragraph included the provision at issue in this appeal: "[The Developer,] its successors and assigns shall keep the Easement Area open, passable and unimpaired at all times."  *Id.*

_____

[8] *See* Trial Ct. Op. at 5 ("The dominant estate is the one who 'enjoys the easement' by using the easement over another landowner's property, whereas the servient estate is the landowner."), *citing* **Reed v. Allegheny Co.**, 199 A. 187, 190 (Pa. 1938).

[9] This portion of the Declaration of Easement stated, "access for the benefit of the Association."  Declaration of Easement at 2.  The "Association" was defined earlier in the same document as North Pointe Community Association, Appellee herein.  *See id.* at 1.

In light of the foregoing, we conclude the Declaration of Easement imposed on North Pointe the duty to "keep the Easement Area open, passable and unimpaired at all times." *See McNaughton Props., LP*, 981 A.2d at 227; Declaration of Easement at 2. This plain language required North Pointe to make all necessary repairs to the Bridge, no matter its former or current condition, such that the Bridge will be "open, passable and unimpaired at all times." *See* Declaration of Easement at 2. We acknowledge, as did the trial court, the uncommon easement use in this case: "the dominant estate, [North Pointe], has neither used the easement nor caused damages to [Appellants'] servient estate." *See* Trial Ct. Op. at 6 n.16. North Pointe enjoys no recreational, travel, or general access over the Bridge; instead, its sole easement goes to repairing the Bridge for the benefit of Appellants (as well as Township vehicles in emergency situations). Nevertheless, North Pointe does not dispute it bears a duty under the Declarations of Easement and Covenant; it merely disputes the scope of that duty.

Accordingly, we conclude the trial court erred in finding that because the Bridge was not in good repair or good condition, North Pointe was not required to make any repairs. We thus reverse the judgment entered, on Appellants' breach of contract claim, in favor of North Pointe and against Appellants.[10] We remand for the trial court to determine the proper amount

---

[10] We do not reach the merits of Appellants' negligence claim.

of damages, if any. The court may, in its discretion, request the parties to submit briefs or hold further evidentiary hearings.

In light of our disposition of Appellants' first issue, we do not reach their second issue.[11]

## VII. Conclusion

We reverse the judgment entered in favor of North Pointe and against Appellants. Case remanded for trial court to determine damages, if any. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/4/2022

---

[11] In their second issue, Appellants contend North Pointe failed to exercise its statutory rights against the Developer and satisfy its fiduciary duties to its membership. North Pointe responds Appellants have waived this issue for failure to include it in their Rule 1925(b) statement. North Pointe's Brief at 31. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived.").