J-A04018-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CORNELL ARDMORE, LP | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORNA ISEN | : | |
| _____ | : | |
| LORNA ISEN | : | No. 1257 EDA 2021 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CORNELL ARDMORE, LP, CORNELL | : | |
| ARDMORE, TH, LLC, CORNELL | : | |
| HOMES, LLC, AND THE RYLAND | : | |
| GROUP, INC. | : | |
| | : | |
| | : | |
| APPEAL OF: CALATLANTIC GROUP, | : | |
| INC., SUCCESSOR BY MERGER TO | : | |
| THE RYLAND GROUP, INC. AND THE | | |
| RYLAND GROUP, INC. | | |

Appeal from the Judgment Entered March 23, 2021
In the Court of Common Pleas of Montgomery County Civil Division at
No(s):  2015-11943,
2015-15607

BEFORE:  LAZARUS, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 12, 2022**

Appellant Calatlantic Group, Inc., successor by merger to the Ryland

Group, Inc., appeals from the judgment entered in favor of Appellee Lorna

Isen following a bifurcated trial in these consolidated actions.  Appellant

contends that the trial court erred in holding that Appellant had explicitly or

implicitly assumed the liabilities of co-defendants Cornell Ardmore, LP, Cornell Ardmore, TH, LLC, and Cornell Homes, LLC.  We affirm.

The trial court summarized the relevant factual and procedural history of this matter as follows:

**A. Evidentiary Facts**

**1. [Appellee's] purchase and the defects in her home**

The case arises from the sale of a home by defendant Cornell Ardmore, LP (Cornell Ardmore), to [Appellee] in a development known as Waterford Walk, located in the Ardmore section of Lower Merion Township, Montgomery County.  Cornell Ardmore is a limited partnership whose sole general partner is defendant Cornell Ardmore, TH, LLC.  That general partner is in turn owned by Cornell Homes of Delaware, LLC [(Cornell Delaware)], an umbrella for various residential developments marketed under the Cornell Homes name.  [Cornell Delaware], was not named as a party in this litigation.  The construction of the homes in Waterford Walk, as in many other Cornell Homes developments, was done by defendant Cornell Homes, LLC, a construction general contractor, primarily through subcontractors.  Cornell Homes, LLC, is itself owned by [Cornell Delaware].

The evidence[fn4] showed that [Appellee] signed a purchase agreement with Cornell Ardmore on June 24, 2013, for the purchase of a unit at Waterford Walk. . . .

[fn4] The evidence is summarized in a light most favorable to [Appellee], as the verdict winner.

In connection with the purchase, [Appellee] received a written Cornell Homes Premier Protection Plan.  The Plan set forth in detail the warranties provided by the "Builder" for one, two, or ten years, depending on the component at issue.

Closing on the purchase occurred in November 2013, subject to a punch list and an escrow to cover uncompleted work.  [Appellee] finally moved into the home in early January 2014 and immediately experienced repeated floods at the property. . . . Despite repairs by Cornell Homes, LLC, [Appellee] continued to experience floods and water leaks, including flooding of the

backyard deck, totaling ten such incidents between January 2014 and February 2017. [Appellee] encountered other issues, including blown fuses, electrical vibration when she inserted plugs into sockets, sharp edges on tiles, and uneven and insufficient heat in parts of the house. . . .

\* \* \*

[Appellee] finally moved out of her home in February 2017, feeling that it was unsafe to remain in the home as a result of repeated flooding, missing parts of floors, the absence of heat in parts of the house, and electrical issues. . . .

**2. The Purchase Agreement and the Services Agreement between [Appellant] and [Cornell Delaware]**

On May 23, 2013, prior to [Appellee's] purchase agreement, [Cornell Delaware], entered into a separate purchase agreement with [Appellant], under which [Appellant] agreed to purchase the assets of several Cornell developments, including Waterford Walk, as well as rights to the name "Cornell Homes." On July 15, 2013, [Appellant] and [Cornell Delaware], entered into amendment no. 8 to purchase agreement. Among other changes, amendment no. 8 amended the purchase agreement by excluding Waterford Walk from the assets to be purchased by [Appellant]. The document recited that the development was being excluded because Ryland, as a result of its due diligence inspections, had determined that "certain environmental and/or other concerns" may exist on the Waterford Walk property.

Although Waterford Walk was thereby excluded from the acquired assets, [Appellant] and [Cornell Delaware], entered into a separate services agreement regarding Waterford Walk and other excluded assets on or about July 18, 2013, the same date as the closing on the purchase by [Appellant]. The services agreement provided that in consideration for the assets that [Appellant] was acquiring, [Appellant] agreed to provide services "in connection with the assets that were not acquired and the ongoing operation associated with these assets." Accordingly, [Appellant] agreed to provide, through July 31, 2014, "certain accounting, customer service and other operational and supervisory services utilizing [Appellant] employees." The services agreement went on to establish certain limitations on [Appellant's] obligations under the agreement. The services agreement was extended by agreement through November 30, 2014.[fn6]

[fn6] The services agreement dated July 18, 2013, was not marked as an exhibit at trial. Instead, a services agreement dated July 28, 2014, was admitted [at trial] as Exhibit P-25. In testimony at trial, [Mark McSorley, one of Appellant's representatives] confirmed that "this particular document is an amendment to a similar agreement that was executed on or around July 18, 2013," and that "even though this document is dated July 28, 2014, the reality is it's a continuation of what really began to happen on July 18, 2013 going forward in time." There was no objection to this oral testimony of the content of the prior agreement.

Pursuant to the purchase agreement, Gregory Lingo, one of the three members of [Cornell Delaware], became President of the Philadelphia Division of [Appellant] (one of many divisions in the corporation), and Mark McSorley, another of the three members, became Vice President of Finance of the Philadelphia Division [of Appellant]. At trial, Mr. McSorley explained the purpose of the services agreement as follows:

So when [Appellant] purchased the assets of [Cornell Delaware], some of the assets, they realized that they were buying the majority assets but not all the assets. And so they recognized that these other assets that weren't being purchased were going to need manpower to complete the homes. And even in some cases a home that was constructed and closed by Cornell, a month before that may have a service issue and they didn't want us to need to go and hire temporary service people in these different locations and be distracted by those activities. So we entered into a services agreement, which allowed employees that became [Appellant] employees to still represent themselves and represent Cornell Homes as Cornell Homes employees.

[Mr. McSorley further testified that prior to the purchase agreement between Cornell Delaware and Appellant, employees of Cornell Homes, LLC performed work on Waterford Walk pursuant to a service agreement between Cornell Homes, LLC and Cornell Ardmore. He explained that while Cornell Ardmore owned the land on which Waterford Walk was being built, it did not have any employees. Mr. McSorley described Cornell Homes, LLC as the builder of Waterford Walk. He also explained that although Cornell Homes, LLC, was not named in the services agreement, it was included in that agreement because Cornell Delaware owns

Cornell Homes, LLC. Additionally, Mr. McSorley testified that Appellant entered into a licensing agreement with Cornell Delaware, which allowed Appellant to use the Cornell Homes brand name and logo. A copy of this licensing agreement was admitted into evidence.]

Prior to [Appellant's] purchase, the construction of Waterford Walk was overseen by two employees of Cornell Homes, LLC — James Kildea, the project manager, and Matthew Egan, Mr. Kildea's supervisor. After the purchase, they became employees of [Appellant] but continued to manage Waterford Walk, apparently pursuant to the services agreement. Mr. Egan is listed on the services agreement as a[n employee of Appellant] who would provide services [to Waterford Walk] under the agreement. Mr. Kildea is not so listed, but he continued to oversee the construction work on [Appellee's] home both before and after she acquired title on November 15, 2013. Mr. Kildea was confused over whether his continued work on Waterford Walk was in his capacity as an employee of [Appellant] or of a Cornell entity, and he remained uncertain at the time of trial. In any event, in his work on completion of Waterford Walk, he was paid by [Appellant].

On July 23, 2013, ten days after the closing on [Appellant's] purchase, [Appellee] received an email from Ms. Zefferino, reading as follows:

Hi All,

I just wanted to be one of the first to let you know about a recent event that just occurred in our Custom Homes family! On Friday, July 19th it was announced that [Appellant] acquired the assets and operations of Cornell Homes. (I've attached the link to the Wall Street Journal article below). I wanted to assure all of you that it will be "business as usual" here at Waterford Walk and this acquisition does not change anything to do with the personnel, construction, and quality of your home. This influx of capital into the already successful Cornell Homes company will provide endless opportunities in land acquisition and allow our company to grow.

* * *

All of us here at Cornell will continue to work diligently to complete your beautiful new homes at Waterford Walk! . . .

> Rose Zefferino
>
> General Manger
>
> Cornell Custom . . .

At the time that she received this email, [Appellee] did not have a deposit at risk, so she could have canceled the agreement of sale without penalty. She did not do so, in part because she was reassured by Ms. Zefferino's email that the construction of her home was now being backed by [Appellant], a well-capitalized publicly held company with a good reputation.

Following the services agreement, in the course of sending emails to [Appellee], Mr. Kildea and Mr. Egan sometimes used an email address with the domain of "ryland.com" and a signature block reading "Cornell Homes by Ryland Homes."

## B. Procedural History

On March 29, 2015, Cornell Ardmore commenced this action against [Appellee], docketed at No. 2015-11943, seeking to recover the funds escrowed at the closing on her home. On July 8, 2015, [Appellee] commenced a separate action against Cornell Ardmore, Cornell Ardmore TH, LLC (the general partner of Cornell Ardmore), and Cornell Homes, LLC (collectively, "the Cornell Defendants"), and [Appellant], docketed at No. 2015-15607. Her First Amended Complaint, filed August 24, 2015, asserted six counts — Count I, for breach of contract; Count II, for breach of express written warranty; Count III, for breach of implied warranties; Count IV, far violation of the Interstate Land Sales Pull Disclosure Act; Count V, for violation of the Uniform Planned Community Act; and Count VI, for violation of the Unfair Trade Practices and Consumer Protection Law (UTPCPL).

By orders of the Honorable Calvin S. Drayer, Jr., dated March 11, 2016, the two cases were consolidated under No. 2015-11943, the first-filed case. [Order, 2015-15607, 3/11/16; R.R. at 372a.[1]]

---

[1] We may cite to the parties' initial or supplemental reproduced record for the parties' convenience. We also cite to the reproduced record when there was

*(Footnote Continued Next Page)*

Shortly before trial, Cornell Ardmore withdrew its claim against [Appellee] in No. 2015-11943.

Prior to trial, it was agreed that trial would be bifurcated, with the three common-law claims to be tried to a jury and the three statutory claims to be subsequently tried non[-]jury. Jury trial was held on February 25 through 28, 2020. At the close of [Appellee's] case-in-chief, [Appellant] moved for a compulsory nonsuit on the issue of its successor liability, arguing that there was insufficient evidence to submit to the jury the issue of its liability for breaches by the Cornell Defendants. The court denied the motion. At the close of all the evidence, [Appellant] renewed its argument by a motion for directed verdict, which the court also denied.

After closing arguments, the charge to the jury, and the jury's deliberations, the jury returned a verdict that [Appellee] had not proved a breach of contract but that she had proved a breach of express and implied warranties by Cornell Homes, LLC, and [Appellant], but not by Cornell Ardmore. The jury awarded damages for such breaches in the amount of $165,000.

The non[-]jury phase of trial was held on November 24, 2020.[fn13] After briefing, the court rendered a decision on January 15, 2021. The court determined that Cornell Homes, LLC, committed an unfair or deceptive act or practice pursuant to section 2(4)(xiv) of the UTPCPL, 73 P.S. § 201-2(4)(xiv) (relating to failure to comply with a written warranty); that Cornell Homes, LLC, acted wrongfully but not maliciously, and therefore double, but not treble, damages would be awarded under section 9.2(a) of the UTPCPL, 73 P.S. § 201-9.2(a); and that attorney fees and costs would be awarded in the amount of $120,000 under the UTPCPL. . . . Consistent[] with the jury's finding of successor liability

_____

no dispute as to whether a particular document was part of the certified record.

However, we note that in the supplemental record, the face sheet for the notes of testimony from the November 24, 2020 non-jury phase of the trial states that the non-jury trial was held on February 24, 2020. The notes of testimony in the certified record have the correct date on the face sheet. Based on our review of the certified record, we discern no other typographical errors in the notes of testimony included in the supplemental reproduced record.

against [Appellant], the court awarded the foregoing relief against [Appellant] as well as Cornell Homes.

> [fn13] The non[-]jury trial was originally scheduled for late March 2020 but could not be held because of the COVID-19 judicial emergency. The non[-]jury trial was conducted by videoconference.

Trial Ct. Op., 7/16/21, at 2-9 (some citations and footnotes omitted, and formatting altered).

Appellant and its co-defendants filed a timely post-trial motion, which requested judgment notwithstanding the verdict (JNOV) and a new trial. R.R. at 998a-1066a. The trial court denied the post-trial motion on March 22, 2021. Judgment was entered in favor of Appellee the following day.

Appellant filed a timely notice of appeal[2] and a court-ordered Pa.R.A.P. 1925(b) statement.[3] The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

On appeal, Appellant raises one issue for our review:

Whether the trial court erred in refusing to grant [Appellant's] motion for directed verdict/judgment notwithstanding the verdict

---

[2] As stated above, this matter began as two separate cases, but the trial court consolidated both cases under docket number 2015-11943. **See** R.R. at 372a. Therefore, Appellant's filing of a single notice of appeal does not run afoul of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018) or Pa.R.A.P. 341. **See Always Busy Consulting, LLC v. Babford & Co.**, 247 A.3d 1033, 1043-44 (Pa. 2021).

[3] In its Rule 1925(b) statement, Appellant raised multiple issues that it does not include in its brief. Therefore, we conclude that Appellant has abandoned those issues on appeal. **See Allied Envtl. Serv., Inc. v. Roth**, 222 A.3d 422, 424 n.1 (Pa. Super. 2019) (stating that "[a]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived" (citation omitted)).

and in issuing its decision against [Appellant] on the issue of successor liability where there was no legal or factual basis to find that [Appellant] was a successor to Cornell Homes, LLC because, *inter alia* (A) [Appellant] did not implicitly or expressly assume any liability of Cornell Homes, LLC; (B) pursuant to a purchase agreement between [Appellant] and nonparty [Cornell Delaware], [Appellant] acquired some but not all of the assets of nonparty [Cornell Delaware] only and none of the assets or liabilities of Cornell Homes, LLC; and (C) the purchase agreement expressly excluded as an acquired asset the Waterford Walk development and [Appellant's] liability relating thereto?

Appellant's Brief at 6 (formatting altered).

The crux of Appellant's claim is that the trial court erred in concluding that Appellant was a successor in liability to Cornell Homes, LLC. *Id.* at 23-33. Appellant notes that, in general, when one company purchases the assets of another, the purchaser is not liable for the debts or liabilities of the seller. *Id.* at 23. Appellant acknowledges that there is an exception to this rule when the purchaser implicitly assumes the obligations of the seller. However, Appellant claims that the exception is inapplicable here, as Appellant purchased assets from Cornell Delaware, which is a separate entity from co-defendant Cornell Homes, LLC and is not a party to this action. *Id.* at 23-25.

Appellant further argues that even if the exception for implicit assumption of liabilities applied, the trial court erred in applying **Bird Hill Farms, Inc. v. U.S. Cargo & Courier Serv., Inc.**, 845 A.2d 900 (Pa. Super. 2004) (**Bird Hill**) to the facts of this case. *Id.* at 26.

Appellant asserts that "[t]here is no evidence to support a finding that [Appellant] expressly assumed Cornell Homes, LLC's obligations." *Id.* at 25. Appellant notes that the purchase agreement between Appellant and Cornell

- 9 -

Delaware, as amended, stated that Appellant was not assuming any liabilities for Waterford Walk. *Id.* at 28.

Appellant further contends that none of the three *Bird Hill* factors have been established in this case. *Id.* at 28-32; *see also Bird Hill*, 845 A.2d at 905 (stating that relevant factors include "[(1)] whether the successor's conduct indicated its intention to assume the debt; [(2)] whether the creditor relied on the conduct and the effect of any reliance; and [(3)] whether the successor's representatives admitted liability").

First, Appellant asserts that it did not assume the operations of Cornell Homes, LLC when it entered into the services agreement with Cornell Delaware. *Id.* at 29. Second, Appellant contends that there is no evidence that Appellee relied on Appellant's purported assumption of Cornell Homes' operations. *Id.* at 30-31. Third, Appellant claims that it has not admitted liability. *Id.* at 31-32. Therefore, Appellant concludes that the trial court erred in its application of *Bird Hill* to the facts of this case.

When reviewing an order resolving a post-trial motion for JNOV, our standard of review is as follows:

> A JNOV can be entered upon two bases: (1) where the movant is entitled to judgment as a matter of law; and/or, (2) the evidence was such that no two reasonable minds could disagree that the verdict should have been rendered for the movant. When reviewing a trial court's denial of a motion for JNOV, we must consider all of the evidence admitted to decide if there was sufficient competent evidence to sustain the verdict. In so doing, we must also view this evidence in the light most favorable to the verdict winner, giving the victorious party the benefit of every reasonable inference arising from the evidence and rejecting all

- 10 -

> unfavorable testimony and inference. Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact. If any basis exists upon which the [trial court] could have properly made its award, then we must affirm the trial court's denial of the motion for JNOV. A JNOV should be entered only in a clear case.

***Wag-Myr Woodlands Homeowners Ass'n v. Guiswite***, 197 A.3d 1243, 1252 (Pa. Super. 2018) (***Wag-Myr Woodlands***) (citation omitted).

> Our Supreme Court has explained that JNOV

> should only be entered in a clear case with any doubts resolved in favor of the verdict winner. An appellate court "stands on a different plane" than a trial court, and it is the trial court that has the benefit of an "on-the-scene evaluation of the evidence." As such, while the appellate court may disagree with a verdict, it may not grant a motion for JNOV simply because it would have come to a different conclusion. Indeed, the verdict must stand unless there is no legal basis for it.

***Menkowitz v. Peerless Publications, Inc.***, 211 A.3d 797, 804 (Pa. 2019) (citations omitted).

> The following standard of review applies to our review of the trial court's

denial of a motion for a new trial:

> We will reverse a trial court's decision to deny a motion for a new trial only if the trial court abused its discretion. We must review the court's alleged mistake and determine whether the court erred and, if so, whether the error resulted in prejudice necessitating a new trial. If the alleged mistake concerned an error of law, we will scrutinize for legal error. Once we determine whether an error occurred, we must then determine whether the trial court abused its discretion in ruling on the request for a new trial.

***Carlini v. Glenn O. Hawbaker, Inc.***, 219 A.3d 629, 643 (Pa. Super. 2019) (citation omitted). Further, this Court may affirm the decision of the trial court

on any valid grounds. *See generally Liberty Mut. Ins. Co. v. Domtar Paper Co.*, 77 A.3d 1282, 1286 (Pa. Super. 2013) (stating that "an appellate court may affirm a trial court's decision on any grounds supported by the record on appeal" (citation omitted)).

> Under Pennsylvania jurisprudence, a successor company is not responsible for its predecessor's liabilities unless one of the following conditions is established: (1) the successor company expressly or **impliedly** agreed to assume the obligations; (2) the transaction was a consolidation or merger; (3) the successor company merely was a continuation of the selling corporation; (4) the transaction was a fraudulent attempt to escape liability; or (5) the transfer lacked adequate consideration and no provisions were made for creditors of the predecessor.

*Bird Hill*, 845 A.2d at 905 (citations omitted and emphasis in original). "Whether an entity implicitly assumed the obligations and liabilities of another entity is a question of law, albeit one that is dependent on the facts relating to [the successor's] conduct." *Id.* at 903.

In *Bird Hill*, Courier Unlimited, Inc. (Courier) leased commercial property from the plaintiff, Bird Hill Farms. *Id.* at 902. Courier then entered into an asset purchase agreement with the defendant, U.S. Cargo. *Id.* Courier began negotiating to assign its lease with Bird Hill Farms to the defendant. *Id.* While those negotiations were pending, the defendant conducted business operations in the leased property and paid rent to Bird Hill Farms. *Id.* However, Bird Hill Farms never assigned the lease from Courier to the defendant. *Id.* Eventually, the defendant vacated the property without notice. *Id.* When Bird Hill Farms sued the defendant for violating the lease,

- 12 -

the trial court concluded that the defendant had implicitly assumed Courier's lease under the principles of corporate successor liability. *Id.*

The *Bird Hill* Court explained:

Our review of the case law has not identified an authoritative case addressing an implicit assumption, and other jurisdictions confronting this issue have reached different results.

In determining whether a successor corporation implicitly assumed an obligation of its predecessor, the following factors are relevant: [(1)] whether the successor's conduct indicated its intention to assume the debt; [(2)] whether the creditor relied on the conduct and the effect of any reliance; and [(3)] whether the successor's representatives admitted liability.

The trial court applied similar factors to the case *sub judice* and summarized its determination as follows:

This court finds that because [the defendant] occupied the premises, paid rent directly to the landlord and paid the utilities in its own name, maintained the property, and conducted business from the site for eleven months, [it] assumed Courier's lease with Bird Hill farms and is bound by the consequences of its breach of the lease obligations.

The trial court reasoned that under these facts, [the defendant] was a successor-in-interest to the lease.

Mindful of the above-noted factors and in light of the trial court's express rationale, we affirm the trial court's conclusion. [The defendant's] conduct toward [the plaintiff] and the leased premises indicated an intent to assume the lease. [The plaintiff] relied on [the defendant's] actions and suffered damages when [the defendant] abandoned the building without notice. Hence, despite [the defendant's] assertion to the contrary, it impliedly assumed Courier's obligation under the lease.

*Id.* at 905-06 (citations omitted). The *Bird Hill* Court did not explicitly address the third factor concerning whether the defendant's representatives had admitted liability. *Id.*

- 13 -

Here, Appellee entered into an agreement with Cornell Ardmore to purchase a townhome that was to be built as part of the Waterford Walk development. *See* S.R.R. at 21b, 138b-39b. Prior to Appellant's purchase agreement with Cornell Delaware, Cornell Homes, LLC was the builder for Waterford Walk. Cornell Homes, LLC provided employees to work on the development via a service agreement with Cornell Ardmore, which owned the real property. *See id.* at 118b-20b, 133b, 138b, 167b, 1246b. After Appellant purchased many of Cornell Delaware's assets, Appellant entered into a services agreement with Cornell Delaware. *See id.* at 110b-12b; 1140b-41b. The services agreement provided that Appellant's employees would render services at Cornell developments that were not covered by the purchase agreement, which included Waterford Walk. *See id.* at 110b-12b, 528b.

At trial, Mr. McSorley explained that although Appellant entered into a service agreement with Cornell Delaware, which was not a party to the action, Cornell Homes, LLC was covered by the agreement because Cornell Delaware owns Cornell Homes, LLC. *See id.* at 143b-44b. Further, the agreement permitted Appellant's employees to represent themselves as Cornell Homes, LLC employees. *See id.* at 110b-11b, 113b, 426b-27b, 976b; *see also id.* at 541b-44b (reflecting that Appellant licensed the brand name "Cornell Homes" from Cornell Delaware). Matt Egan and John Kildea were employees of Cornell Homes, LLC who became Appellant's employees. *See id.* at 751b-52b, 1141b. Both were responsible for completing the work at Waterford Walk

- 14 -

in their capacity as Appellant's employees. *See id.* at 149b, 425b-27b, 531b-34b, 759b-60b, 796b-97b, 1141b.

Ultimately, the trial court concluded that there was sufficient evidence to conclude that Appellant implicitly assumed the liabilities of the Cornell entities. In reaching this conclusion, the trial court considered the actions of Appellant's employees and Appellee's testimony at trial.

Specifically, the trial court explained:

The reasoning of **Bird Hill** applies to the present case. The evidence supports the inference that although [Appellant] did not acquire Waterford Walk, it still assumed responsibility for the operations of the Waterford Walk development, including the completion of construction. [Appellant] entered into the services agreement to operate the Waterford Walk development, essentially taking over the relevant Cornell companies' obligations, even while avoiding ownership of a property that raised concerns of environmental or related liability. [Appellant] did so in consideration for its acquisition of other Cornell developments and in order to preserve and control the value of the "Cornell Homes" name that it had purchased. Pursuant to the services agreement, [Appellant's] employees oversaw the ongoing construction of [Appellee's] home and the responses to [Appellee's] complaints of defects in the home. [Appellant] did so through James Kildea and Matthew Egan, formerly employed by Cornell Homes, LLC. Further, [Appellee] proceeded with the transaction in reliance on the understanding, as conveyed by Ms. Zefferino, that the home construction was now backed by [Appellant], a large, reputable company. This understanding was reinforced by repeated conflation of the Cornell and [Appellant] names in email communications from Waterford Walk representatives.

These facts, based on the evidence at trial, were sufficient to support the jury's finding that [Appellant] implicitly assumed the obligations of the Cornell Defendants to [Appellee], pursuant to the holding in **Bird Hill**. As in **Bird Hill**, the asset purchaser could not rely on non-assumption language in the purchase agreement when its own conduct after the purchase showed that it was

- 15 -

assuming the obligations of the seller. Just as [the defendant in **Bird Hill**] enjoyed the benefits of Courier's lease by continuing to occupy the premises, so did [Appellant] benefit from its completion of Waterford Walk operations by the protection of its investment in the "Cornell Homes" name and goodwill that it had purchased and by its acquisition of the employees charged with operating that development.

It is true that the purchase agreement between [Appellant] and [Cornell Delaware], dated May 23, 2013, provided that [Appellant] was assuming only specified "Assumed Liabilities" and was not assuming "any Liability arising from the Excluded Assets" and that the subsequent amendment no. 8, dated July 15, 2013, added Waterford Walk to the list of excluded assets. But the original services agreement, under which [Appellant] assumed responsibility for the operation of Waterford Walk, was dated three days later, July 18, 2013, so to the extent that it is in conflict with amendment no. 8, the later document would govern. In any event, **Bird Hill** makes clear that the purchaser's conduct after the purchase can result in an implied assumption of liability, even if the purchase agreement contains language disclaiming any such assumption. Finally, the jury could find from the evidence that [Appellant's] exclusion of Waterford Walk from the purchased assets, in order to avoid liability for "environmental and/or other concerns", while still assuming responsibility for the operation of the development, was a contractual sleight-of-hand that obscured the reality of the allocation of responsibility between the parties to the purchase.

This analysis does not address **which** [of the] Cornell companies' obligations were impliedly assumed by [Appellant], but a concession made by defense counsel at trial makes such an analysis unnecessary. Prior to the jury trial, pursuant to direction of the court to agree upon the points for charge to the jury, the parties filed Proposed Joint Points for Charge (Seq. 208). During the charge conference near the end of the jury trial, the court noted that the joint proposal repeatedly used the term "Cornell Defendants," without distinguishing between Cornell Ardmore and Cornell Homes, LLC (or, indeed, any other Cornell entities). The court specifically inquired whether defense counsel wanted the court to distinguish between the two Cornell Defendants in the charge to the jury, and defense counsel expressly stated that it was not necessary to do so.

- 16 -

Accordingly, the court substantially adopted the agreed points for charge and did not distinguish between the "Cornell Defendants" in charging the jury. By returning a verdict for breach of warranties against Cornell Homes, LLC, and [Appellant], the jury necessarily found that [Appellant] was liable as successor to Cornell Homes, LLC. In view of the position it took at trial, [Appellant] cannot now argue that the jury found (or was permitted to find) that [Appellant] was successor to the "wrong" Cornell entity.

In short, under **Bird Hill**, the evidence was sufficient to submit to the jury the issue of [Appellant's] successor liability and to support the jury's verdict against [Appellant] for the liability of Cornell Homes, LLC.

\* \* \*

There is no dispute that [Appellant] itself never gave any warranties, express or otherwise, directly to [Appellee]. There is also no dispute that Cornell Homes, LLC, did issue express warranties to [Appellee]. Further, as a home builder, Cornell Homes, LLC, gave [Appellee] an implied warranty of reasonable workmanship — *i.e.*, that the home is constructed in a reasonably workmanlike manner and that it is fit for its intended purpose. **See Elderkin v. Gaster**, 288 A.2d 771, 777 (Pa. 1972). Finally, there was ample evidence, discussed above, to support the jury's finding that these warranties were breached.

Although [Appellant] itself did not make these express and implied warranties, the jury found (and the [c]ourt agreed) that [Appellant] assumed the liability of Cornell Homes, LLC, for breach of warranty under the **Bird Hill** standard.

Trial Ct. Op. at 11-16 (some citations and footnotes omitted).

Based on our review of the record, we agree with the trial court that Appellant's conduct indicated its intent to assume the liabilities of Cornell Homes, LLC. **See Bird Hill**, 845 A.2d at 905. Appellant entered into a services agreement to provide employees to oversee the completion of Waterford Walk, including Appellee's home, an obligation imposed on Cornell

- 17 -

Homes, LLC pursuant to its own services agreement with Cornell Ardmore. Therefore, the trial court correctly concluded that the first **Bird Hill** factor weighed against Appellant.[4]

The record also reflects that Appellee relied on Appellant's conduct when she proceeded with the purchase of her home. As noted by the trial court, Appellee testified that after receiving the July 19, 2013 announcement that Appellant had acquired Cornell Homes, she believed that Appellant would finish building her home. **See** S.R.R. at 239b. Appellee further stated that although she had some problems with Cornell Homes, she chose to move forward with the purchase of her home because Appellant, "a reputable public company[,] was now behind" the construction of Waterford Walk. **See id.** at 240b-41b. Although Appellant claims that Appellee's testimony was not credible, this Court may not substitute our judgment for that of the finder of fact. **See Wag-Myr Woodlands**, 197 A.3d at 1252. Therefore, we agree with the trial court that the second **Bird Hill** factor weighs against Appellant. **See Bird Hill**, 845 A.2d at 905.

Finally, we note that the trial court did not address the third **Bird Hill** factor concerning whether Appellant's representatives admitted liability.

---

[4] However, we disagree with the trial court's conclusion that Appellant waived its claim as to which of Cornell company's obligations Appellant had implicitly assumed. Nevertheless, for the reasons stated above, we conclude that the evidence, viewed in the light most favorable to Appellee as the verdict winner, established that Appellant intended to assume the obligations of Cornell Homes, LLC. **See Liberty Mut.**, 77 A.3d at 1286 (stating that this Court may affirm on any valid basis supported by the record).

However, **Bird Hill** did not require all three factors to be present in order to find successor liability, nor did it address how much weight had to be afforded to each factor. **See id.** at 905-06. Indeed, the **Bird Hill** Court did not discuss the third factor at all when it found that the defendant had assumed the lease of its predecessor. **See id.** at 906. Therefore, although Appellant claims that the third factor weighs in its favor, it is not entitled to relief.

For these reasons, notwithstanding any disclaimer of liability in the agreements between Appellant and Cornell Delaware, we conclude that Appellant implicitly assumed the liabilities of Cornell Homes, LLC with respect to Appellee. **See id.** at 905-06. Therefore, we affirm the trial court's denial of Appellant's motion for JNOV and its motion for a new trial. **See Menkowitz**, 211 A.3d at 804; **Carlini**, 219 A.3d at 643; **Wag-Myr Woodlands**, 197 A.3d at 1252. Accordingly, we affirm the trial court's judgment in favor of Appellee.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/12/2022

- 19 -