J-A03005-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KENNETH E. MOYER AND BECKY L. MOYER, HIS WIFE, AND RAYFORD G. NEELY AND CATHERINE E. NEELY, HUSBAND AND WIFE | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILFORD L. WALTERS AND CAROL A. WALTERS, HUSBAND AND WIFE, EARL I. CONNER AND BETTY A. CONNER, HUSBAND AND WIFE, JAMES S. HEWITT AND NORMA HEWITT, HUSBAND AND WIFE, TOGETHER WITH THEIR HEIRS, EXECUTORS, SUCCESSORS AND ASSIGNS, AND ALL OTHER PERSONS CLAIMING THROUGH THEM | : | |
| | : | |
| Appellants | : | |
| | : | No. 635 WDA 2023 |
| APPEAL OF: GEORGE CONNER | : | |

Appeal from the Order Entered May 9, 2023
In the Court of Common Pleas of Blair County Civil Division at No(s):
21403 GN 1997

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                **FILED:  May 24, 2024**

George Conner ("George") appeals from the order that, *inter alia*, found him in contempt of prior orders concerning a right of way over a private road abutting his property, as well as the property of Appellees Kenneth and Becky

Moyer ("the Moyers"), and Rachel Pletcher.[1]  We affirm in part, vacate in part, and remand with instructions.

This case involves an intra-family feud between George and his brother Donald Conner ("Donald"), both of whom lived on White Oak Lane, a private dirt roadway that ran alongside their parents' family farm.  George's apparent disgruntlement with Donald over the disposition of the farm has expanded into a feud between George and his son Joshua Conner on the one hand, and on the other the rest of Appellees, who are residents of White Oak Lane and include additional members of the Conner family.  To understand how this state of affairs came to be, we must travel back to 1997 when the instant lawsuit commenced.

The original plaintiffs in this case were Rayford and Catherine Neely, their daughter Becky Moyer, and her husband Kenneth.  The Moyers desired to purchase a home near the Neelys but had difficulty obtaining a mortgage because they had no recorded right to use White Oak Lane, the sole access to their properties.  When only some of the implicated property owners willingly granted an easement, the plaintiffs filed an action to quiet title, asserting that they had an easement by prescription or necessity over the private roadway, which they suggested was twenty feet in width to appease the mortgage

---

[1] At the time, the Neelys' successor was married to Matthew Sleasman and went by Rachel Neely Sleasman.  After Matthew passed away and Rachel remarried, she adopted the surname Pletcher.  For ease of discussion, we identify her as Ms. Pletcher throughout this writing.

company. Accordingly, they requested a decree acknowledging their right of ingress, egress, and regress upon the private roadway and permanently prohibiting any of the defendants, who were the landowners along White Oak Lane between the plaintiffs' properties and public road, from interfering with the use of the twenty-foot-wide easement. *See* Complaint, 3/24/97, at ¶ 25.

The plaintiffs moved for default judgment after no defendant answered the complaint. Upon concluding that all defendants were properly served with the complaint, the trial court entered a judgment by default, ordering as follows in pertinent part:

> 1. That the plaintiffs have the right of ingress, egress and regress over, along and upon a certain parcel of ground, being approximately twenty feet in width and extending 790 feet in depth, in a northwesterly direction from Township Road 406, being a private road, commonly known as White Oak Lane.
>
> . . . .
>
> 3. That the defendants in this proceeding and any person claiming under them, are permanently enjoined and restrained and forever barred from asserting any claim, right, title or interest in the right-of-way, inconsistent with the plaintiffs and defendants are permanently enjoined from interfering with the use of the said easement by the said plaintiffs, their successors and assigns, claim or interest in or to said real property or any part thereof.

Order, 5/12/97, at unnumbered 2 (unnecessary capitalization and redundant numerical values omitted).

No appeal was taken, and as a general rule, the White Oak Lane residents thereafter cooperated in maintaining the private roadway by filling in potholes as needed and clearing snow in the winter.

- 3 -

Fast forwarding to 2009, the Moyers still owned their property, while their niece, Rachel Pletcher and her husband had succeeded to the Neelys' interest. Donald and George still resided on parcels that abutted the roadway further up the lane, but George had also acquired the property along the easement that was held by James and Norma Hewitt at the time of the 1997 order. The Walters family still owned their property along the public road. Original defendants Earl and Betty Conner, the parents of Donald and George, had both passed away and the brothers were embroiled in litigation over their parents' farm, which Donald ultimately acquired in 2010.

In the midst of his battle with Donald, George dug a trench, also described as a ditch or a moat, along the 300 feet of his property that abutted the easement. Mr. Moyer posited that George's motivation was spite. *See* N.T. Hearing, 4/12/22, at 101. George later claimed to have had the intention of installing a drainage ditch to collect water that ran off his property before it reached the road, but he did not share his plan with his neighbors because "what I do on my property is my personal business." *See* N.T. Hearing, 4/13/22, at 129, 155.

George's digging prompted the filing of a petition for contempt and an injunction by Ms. Pletcher and the Moyers, asking the court to: (1) find George in contempt of the 1997 order; (2) direct him to immediately return the easement to its prior condition; and (3) establish the exact location of the twenty-foot-wide easement. *See* Petition, 10/27/09, at ¶ 17. In addressing

the petition, the court accepted a 2007 survey of the area conducted by John Young and scheduled further proceedings to occur after Mr. Young plotted the easement on that survey. Although no version of Mr. Young's survey is contained in the certified record before us, we offer the following visual of the area in question, which is a drawing taken from a brief Appellant filed in the trial court:



(this sketch is intended to show location of the parties in the case only, it is not to scale and is not intented to show the legal boundaries or the actual size of each parcel of land)

Positional Brief, 6/21/22, at unnumbered 2 (lettering modified, parenthetical in original).

When Mr. Young established that George's ditch did interfere with the easement, the court by order dated November 19, 2009, ruled that George

was required to, within fifteen days, "have the ditch professionally filled in and the surface rendered to a level with and a firmness consistent with the existing roadway, except that the slope of the roadway could be engineered so that water runs off to the side of the roadway on [George's] side of the property." Order, 11/20/09, at unnumbered 1. The order further specified that "all parties must take any action needed to maintain the [twenty-foot] right of way as laid out by the survey within [fifteen] days of today's date." *Id*. at unnumbered 2.

In May 2010, George filed a petition to enforce the order, contending that Donald and Ms. Pletcher failed to take action to ensure that the full twenty feet of the easement was clear along their properties.[2] *See* Petition, 5/14/10, at ¶¶ 7-9. The response to the petition asserted that George had not properly repaired the road where the ditch had been, but instead had created a slope such that water flooded the properties of Ms. Pletcher and Donald. The court ordered counsel to negotiate a maintenance agreement for the roadway and for the parties to appear before a mediator to try and reach an accord on the matter. No mediation occurred.

The docket reflected no further activity occurred in the case until George filed a *pro se* contempt petition on June 5, 2013. Therein George asserted

---

[2] At an unspecified time, Donald removed a tree from his property that was within the twenty-foot easement as plotted by Mr. Young, and Ms. Pletcher moved a fence that had interfered with it.

- 6 -

that his brother Earl, who was never a party to these proceedings, along with Donald and the Moyers, had dug a ditch along the easement across the entrance to George's driveway. He maintained that he had called local police "numerous times in the pas[t] years regarding this issue," and sought to have the violators held in contempt for interfering with his right of ingress and egress over the right of way. The court dismissed the petition, indicating that it alleged a new complaint that would have to be asserted in a separate action. *See* Order, 7/14/13. It is unknown whether George followed through with a new filing.

The parties came back to court in late 2021 when the Moyers and Ms. Pletcher filed a petition for contempt and injunction. They alleged that George never properly repaired the road as required by the 2009 order, as it was not "rendered level and to a firmness consistent with the existing roadway." Petition, 11/23/21, at ¶ 11. They asserted that the area of the improperly-filled ditch was in a state of deterioration, with large ruts and holes that George had filled with bricks and stones that were a hazard to vehicles. *Id*. at ¶¶ 10-11. They further contended that, rather than making the roadway level or graded towards his property, George caused the road to slope towards the opposite side. *Id*. at 11. As a result, water that George diverted onto the road from his property impeded their use of the right-of-way by causing muddy conditions in warm weather and ice in winter. *Id*. at 17. Additionally, they stated that George allowed brush to grow from his property into the

easement, placed boards with nails facing up in the right-of-way, and installed posts that inhibited its use. *Id*. at ¶¶ 14-16.

George answered the petition, denying that his trench had been on the easement and asserting that it had been professionally filled. *See* Answer, 3/4/22, at ¶¶ 8, 10. He claimed that he had returned the roadway to a firmness consistent with the rest of the roadway within fifteen days of the 2009 order, and that the ruts and holes were caused by the misuse of the road by Appellees and others. *Id*. at ¶ 11. He observed that the 2009 order did not require him to grade the road for water to run onto his property, but merely allowed such grading, and averred that other parties' actions caused water to run along its center. *Id*. at 17. George further denied placing posts or a nailed board in the right-of-way, allowing brush to grow on the roadway, or having any duty to clear ice from his side of the road. *Id*. at ¶¶ 14-16, 18. George also stated counterclaims for wrongful use of civil proceedings and contempt. *Id*. at ¶¶ 25-35.

The trial court conducted a view of the property and held a hearing on Appellees' petition. At the hearing, the trial court heard from Donald, the Moyers, Ms. Pletcher, George, and George's son Joshua. Both sides described the state of the easement and the roadway that ran through it, as well as offered visual evidence. For example, Appellees proffered the following photographs depicting impediments within the easement and the potholes and

ruts they claimed resulted from George's actions in diverting water onto the road whereas it used to run alongside it:



*See* Plaintiffs' Exhibit 1.

Joshua admitted to placing the items alongside the roadway, but George maintained that such did not violate the prior orders because, even if the items were within the twenty-foot easement, they were not on the roadway itself. *See* N.T. Hearing, 4/13/22, at 91, 100, 155. George acknowledged that he had previously maintained his side of the easement to its full width, but declined to continue doing so after he discovered that the Walters family had voluntarily granted an easement to Ms. Pletcher, and he found no such grant in the deeds concerning the Hewitt property that he now owned and never agreed to it. *Id*. at 145-51.

Following the close of evidence and briefs from the parties, the trial court entered an order providing, *inter alia*, as follows:

> 1.      It is hereby ordered, directed and decreed that the court confirms its order, dated May 12, 1997, wherein the right-of-way over White Oak Lane, is [twenty] feet in width and is located as established in the 2009 survey of Young and Associates, as confirmed in this court's January 4, 2022 order.
>
> 2.      It is hereby further ordered, directed and decreed that the petition for contempt and injunction, filed by the [Appellees] is hereby granted, wherein [George] is found to be in contempt of this court's order, dated May 12, 1997, and this court's order, dated November 19, 2009, wherein George . . . failed to professionally fill in the ditch, as directed in the November 19, 2009 order, as the surface of the roadway was not rendered level with and to a firmness consistent with the existing roadway so that water runs down the middle of the right-of-way, causing additional damage to the surface of the right of way.
>
> 3.      George . . . and his successors shall, within [ninety] days of this order, remove the bricks, concrete and other debris, which he has placed on the right-of-way and hire a reputable road construction company, at his expense, to repair, reconstruct and compact his side of the [twenty]-foot right-of-way, from the

- 10 -

centerline, along his property at 250 White Oak Lane, to the same level and firmness as is consistent with surface of the remaining portions of the right-of-way, both below and above his property. Said reconstruction of the right-of-way shall be done so that the water is directed from the center of the right-of- way towards [George's] property. George . . . and his successors shall maintain his side of the right-of-way, properly repairing any potholes that may develop.

. . . .

5. It is further hereby ordered, directed and decreed that [George] is found to be in contempt of this court's order, dated May 12, 1997, and this court's order, dated November 19, 2009, wherein George . . . failed to take any action needed to maintain the [twenty-foot] right of way, as laid out by the 2009 survey. The court finds that George . . . and/or his son purposely placed impediments within the [twenty]-foot right-of-way, where he placed a shed; stone wall, located at his upper driveway; stairs and a wall, at his lower driveway; metal stakes; bricks, concrete and other debris; and has allowed grass, weeds, brush, flowers, trees and other vegetation to grow within the [twenty]-foot right-of-way.

6. George . . . and his successors shall, within [ninety] days of this order, remove all impediments and encroachments in the [twenty-]foot right-of-way, along his property at 250 White Oak Lane, including, but not limited to, the shed; the stone wall, located at his upper driveway; the stairs and wall, located at his lower driveway; the metal stakes placed in the right-of-way; the bricks, concrete and other debris placed onto the right-of-way, as an attempt to fill in the recurring potholes; and any grass, weeds, brush, flowers, trees or vegetation, growing in the right-of-way, and must continue to maintain and cut any grass, weeds, brush, flowers, trees or vegetation, growing in the right-of way in perpetuity. Likewise, George . . . and his successors must plow the snow and treat the right-of-way, along his property at 250 White Oak Lane, in the winter months to prevent freezing/icy conditions, as well properly fill in any potholes which may occur. George . . . and his successor shall not plow snow so as to obstruct the lane while clearing the lane/right of way bordering his property.

7.      It is further hereby ordered, directed and decreed that all parties and their successors must continue to maintain the full width of the [twenty]-foot right-of-way, for a length of 790 feet from Township Road 406, wherein they must continue to maintain and cut any grass, weeds, brush, flowers, trees or vegetation, growing in the right-of-way in perpetuity, and plow and/or remove snow in the winter and treat the right-of-way in winter to prevent freezing/icy conditions, as well as properly fill in any potholes which may occur.

8.      The . . . following and their successors may use and maintain the [twenty]-foot right-of-way, from the 2009 survey of Young and Associates, without interference of the other owners, which shall not be determined to be trespass or other criminal activity:  Kenneth Moyer, Becky Moyer, Shawn Pletcher, Rachel Neely-Pletcher, Donald E. Conner, Debbie L. Conner, Earl Conner, Isaac B. Conner, Billy Jack, Karen Jack, Andrew Eger, George Eger, Tom Ott, Charles Conner, and Carol Walters.

9.      [George's] counterclaim for contempt is dismissed.

Order, 12/13/22, at 1-5 (cleaned up).

The trial court granted a request for reconsideration and, by order of May 5, 2023, struck a portion of its earlier order not reproduced above but confirmed it in all other respects.  *See* Opinion and Order, 5/5/23, at 9-10. George filed a timely notice of appeal from the final order.  The trial court directed George to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and he timely complied.  The trial court pointed this Court to its prior filings for the bases of its rulings.

George presents the following questions for our consideration:

1.      Did the trial court err and/or abuse its discretion by determining that the right-of-way known as White Oak Lane is [twenty] feet in width when it has never been [twenty] feet in width and the 1997 order merely used the term "[twenty] feet" as a description?

- 12 -

2.      Did the trial court err and/or abuse its discretion by determining [George] was in contempt of the 2009 order by finding he failed to render the surface to a level and a firmness with the existing roadway following the 2009 order when the evidence showed [George] had a professional contractor complete the work on the road in 2009?

3.      Did the trial court err and/or abuse its discretion by determining the 1997 order created an ongoing obligation for [George] to maintain the road?

4.      Did the trial court err and/or abuse its discretion by determining [George] was in contempt of the 2009 order by finding that water did not run off the roadway towards his property in 2021 when the 2009 order merely stated that [George] "could" engineer the road so that it did?

5.      Did the trial court err and/or abuse its discretion by changing the provision in the 2009 order concerning the slope of roadway from "could" be graded so that water flowed towards his property to "shall" be graded towards his property when the purpose of sanctions for contempt are to enforce compliance with the prior order?

6.      Did the trial court err and/or abuse its discretion by . . . finding [George] in contempt of the 2009 order by placing various items alongside the roadway on his property when a finding of contempt requires a volitional act and wrongful intent?

7.      Did the trial court err and/or abuse its discretion in ordering [George] to repair and reconstruct the road along his property when there was evidence that Appellee[s'] actions contributed to the damages and intentionally thwarted attempts to repair the road by [George]?

8.      Did the trial court err and/or abuse its discretion in granting the authority for all the people living on the road to maintain the roadway themselves, without the use of a professional road construction contractor, when this is an action for contempt, many of the people listed were not parties in the case, and the evidence showed that Appellees as well as several of the other people have "maintained" the roadway in a manner which causes it to deteriorate in front of [George]'s property[?]

- 13 -

George's brief at 21-24 (unnecessary capitalization and articles omitted).

We begin with a review of the governing legal principles. To the extent that George challenges the trial court's finding of contempt:

> [A]ppellate review of a finding of contempt is limited to deciding whether the trial court abused its discretion. Judicial discretion requires action in conformity with law on facts and circumstances before the trial court after hearing and consideration. Consequently, the court abuses its discretion if, in resolving the issue for decision, it misapplies the law or exercises its discretion in a manner lacking reason. Similarly, the trial court abuses its discretion if it does not follow legal procedure. This Court must place great reliance on the sound discretion of the trial judge when reviewing an order of contempt.

***Lachat v. Hinchcliffe***, 769 A.2d 481, 487 (Pa.Super. 2001) (cleaned up).

Insofar as the trial court granted Appellees' request for injunctive relief, we observe that "an injunction is an equitable remedy" available when a party interferes with use of a right-of-way. ***Billig v. Skvarla***, 853 A.2d 1042, 1051 (Pa.Super. 2004). This Court "may reverse a decision in an equity matter only for an error of law or abuse of discretion. The findings of fact made by the trial court will not be disturbed unless they are unsupported by competent evidence or are demonstrably capricious." ***Rivas v. Villegas***, 300 A.3d 1036, 1047 (Pa.Super. 2023) (cleaned up). However, if a correct result was reached by erroneous means, we will affirm the trial court despite the error. ***See***, ***e.g.***, ***Turnway Corp. v. Soffer***, 336 A.2d 871, 878 (Pa. 1975) ("A correct result will be sustained if it can be sustained for any reason whatsoever.").

Turning to the substantive law regarding easements, "[i]t is beyond cavil in Pennsylvania that a property owner may use his property only in ways that

- 14 -

do not interfere with the rights of the easement holder." ***Starling v. Lake Meade Prop. Owners Ass'n, Inc.***, 162 A.3d 327, 343 (Pa. 2017). "The owner of the servient tenement may make any use thereof which is consistent with or not calculated to interfere with the exercise of the easement." ***Id***. (quoting ***Minard Run Oil Co. v. Pennzoil Co.***, 214 A.2d 234, 235 (Pa. 1965)) (cleaned up).

With these principles in mind, we address George's questions. His first claim of error is that the easement as granted in 1997 was limited to the existing road, with the proffered approximate width of twenty feet merely describing the roadway, not expanding the easement to that width in places where the existing road was actually narrower. ***See*** George's brief at 46-58. The Hewitts, George's predecessors, could have contested the width of the right-of-way in 1997 but declined. Perhaps George himself could have raised his challenge in the 2009 litigation. Instead, he not only failed to then dispute the validity of the grant of the right-of-way where the drivable road was less than twenty feet, he actively sought to enforce the ruling that the easement was a full twenty feet wide, causing Donald and Ms. Pletcher to move preexisting impediments that were within the right-of-way but not on the roadway.

Thus, the law-of-the-case doctrine precludes George from contesting the width of the right of way now, years after the time for appealing the prior

rulings has passed.[3]  ***See***, ***e.g.***, ***Bienert v. Bienert***, 168 A.3d 248, 255 (Pa.Super. 2017) ("Once a matter has been decided by a trial judge the decision should remain undisturbed, unless the order is appealable and an appeal therefrom is successfully prosecuted."); ***Dunn v. Rulli***, 531 A.2d 103, 105 (Pa.Cmwlth. 1987) ("[I]f a court of competent jurisdiction has entered an order, a party failing to abide by its terms may be held in contempt despite any error or irregularity in the decree, which must be obeyed so long as it is in effect and until it is dissolved or reversed on appeal.").  It is the settled law of this case that the right-of-way is twenty feet in width for its entire length of 790 feet.  Hence, George's first claim fails.

George's remaining issues concern the court's finding that he was in contempt and the relief it ordered, and we address them together.  Concerning the contempt finding, he argues that neither the 1997 order nor the 2009 order imposed an ongoing duty upon him to maintain the road, so his failure to take steps to ensure that it stayed at the same firmness as the rest of the right-of-way did not violate any clear, existing obligation.  ***See*** George's brief

_____

[3] George's attempt to have his cake and eat it too regarding whether all twenty feet of the easement were required to be kept clear, regardless of the width of the road in 1997, is also arguably barred by equitable estoppel. ***See*** ***Morgan v. Millstone Res. Ltd.***, 267 A.3d 1235, 1248 (Pa.Super. 2021) ("Equitable estoppel applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken.  [T]he person inducing the belief in the existence of a certain state of facts is estopped to deny that the state of facts does in truth exist, over a different or contrary state of facts as existing at the same time, or deny or repudiate his acts, conduct or statement." (cleaned up)).

at 60-65, 68-71.[4]   As for the duties that were imposed upon him, George asserts that the evidence failed to show that he acted with wrongful intent when he placed various items on his property along the roadway, and that he had a professional contractor fill the trench. *Id*. at 65-68, 79-84.   Additionally, since the order only stated that he "could" grade the road to cause water to flow on to his property, George avows that his failure to do so cannot serve as a basis for contempt.   *Id*. at 71-76.

As for George's challenges to the injunctive relief ordered, he faults the trial court for ordering him to fix the roadway because "there was evidence that Appellee[s'] actions contributed to the damages and intentionally thwarted [George's] attempts to repair the road[.]"  *Id*. at 85-86.   Further, he contends that the trial court erred or abused its discretion by "granting the authority for all the people living on the road to maintain the roadway themselves," because "many of the people listed were not parties in the case, and the evidence showed that Appellees as well as several of the other people have 'maintained' the roadway in a manner which causes it to deteriorate in front of [George]'s property." *Id*. at 23-24.

---

[4] This is another instance of George advocating a different standard for himself than he sought to have applied to Appellees.  In the counterclaim for contempt included in his answer to the instant petition, George alleged, without qualification, that "the order of November 19, 2009 states that all parties must take action needed to maintain the right-of-way."  Answer, 3/4/22, at ¶ 26 (some capitalization and punctuation altered).

Initially, we agree with George that neither the 1997 order nor the 2009 order imposed a clear duty upon any party to maintain the right-of-way as a smooth driving surface in perpetuity. The trial court posited that "an ongoing obligation to maintain the roadway" was established by the following provision of the 2009 order: "all parties must take any action needed to maintain the [twenty-foot] right of way as laid out by the survey within [fifteen] days of today's date." Order, 11/20/09, at unnumbered 2.

It is well-settled that the order upon which contempt is based must be strictly construed and "must have been definite, clear, and specific—leaving no doubt or uncertainty in the mind of the contemnor of the prohibited conduct." **Lachat**, 769 A.2d at 488–89 (cleaned up). Since the order required maintenance to be completed within fifteen days of the date of the order, namely by December 5, 2009, it obviously could not have spoken to road conditions that arose after that date. Rather, that provision of the 2009 order only mandated, and set a deadline for, completion of any then-necessary road maintenance.

Nevertheless, George had a common law obligation to maintain the portion of the easement abutting his land. It is true that "ordinarily the owner of a servient estate is under no obligation to make repairs; the duty is upon the one who enjoys the easement to keep it in proper condition." **Wag-Myr Woodlands Homeowners Ass'n By Morgan v. Guiswite**, 197 A.3d 1243, 1252 (Pa.Super. 2018) (cleaned up). However, we have held that, where "an

easement in a driveway is owned and utilized by many abutting property owners," the rule is that "each of the owners [is] responsible for the maintenance and repair of only that portion of the driveway abutting or located on his own land." *Id*. at 1253 (cleaned up).

Furthermore, the 2009 order did specifically require George to "have the ditch professionally filled in and the surface rendered to a level with and a firmness consistent with the existing roadway, except that the slope of the roadway could be engineered so that water runs off to the side of the roadway on [his] side of the property." Order, 11/20/09, at unnumbered 1. Additionally, while the 1997 order did not address road maintenance *per se*, it did permanently enjoin George, as the Hewitts' successor, "from interfering with the use of the said easement by the said plaintiffs, their successors and assigns[.]" Order, 5/12/97, at unnumbered 2. This, like the duty to maintain, is one imposed by law. *See Starling*, 162 A.3d at 343.

The trial court found that George violated these obligations by failing to have his ditch professionally filled such that water would not damage the easement, and when he or his son:

> purposely placed impediments within the [twenty]-foot right-of-way, where he placed a shed; stone wall, located at his upper driveway; stairs and a wall, at his lower driveway; metal stakes; bricks, concrete and other debris; and has allowed grass, weeds, brush, flowers, trees and other vegetation to grow within the [twenty]-foot right-of-way.

Order, 12/13/22, at ¶¶ 2, 5. Further, despite protestations to the contrary, the court found that George was fully aware of the location of the easement

based upon survey stakes placed in 2009. *See* Opinion and Order, 5/5/23, at 8.

However, while it noted that Appellees "impute[d] a malice to George . . . and his action and inaction in regard to the roadway and right-of-way," the court expressly indicated that it did not share that assessment of his intent. *Id*. at 9. It deemed George's mere noncompliance an appropriate reason to find him in contempt despite the absence of wrongful intent. *Id*. ("Nevertheless, the [c]ourt finds that George . . . [was] noncompliant with, and thus contemptuous of the [c]ourt's two orders[.]").

The elements of contempt are: "(1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." *Habjan v. Habjan*, 73 A.3d 630, 637 (Pa.Super. 2013) (cleaned up). It is well-settled that a "mere showing of noncompliance with a court order, or even misconduct, is never sufficient alone to prove civil contempt." *Lachat*, 769 A.2d at 488. Hence, the court was unable to hold George in contempt of the prior orders in the absence of a finding of ill intent. We therefore vacate paragraphs two and five of the trial court's December 13, 2022 order to the extent that they state a finding of contempt.

Yet we are unpersuaded that the court's order must be vacated in its entirety. The trial court did not order George to pay Appellees' requested

costs or attorney fees or otherwise sanction him to coerce his compliance with the prior orders. *See*, *e.g.*, *Cnty. of Fulton v. Sec'y of Commonwealth*, 292 A.3d 974, 1004 (Pa. 2023) (observing that civil contempt has the purpose of coercing compliance with an order and "also enables the court to award the complainant expenses incurred as a consequence of the contemnor's violation"). Rather, the court's December 13, 2022 order provided George clear and specific explanations of the duties that the existence of the easement imposed upon him and Appellees, and directed George to take the actions necessary for him to become in compliance. In other words, it did not sanction George for contempt, but granted the injunctive relief that was also requested by Appellees in their "Petition for Contempt and Injunction."

As noted above, injunctive relief is an equitable remedy available when a party interferes with use of a right-of-way. *See Billig*, 853 A.2d at 1051. Accordingly, we consider whether the trial court properly ordered injunctive relief in this case. In this vein, we have explained as follows:

> A court of equity will only grant an injunction where the rights and equity of the plaintiff are clear and free from doubt and the harm sought to be remedied is great and irreparable. A party seeking to enjoin an invasion of his or her right in and to real property must demonstrate that he or she has a clear right to the property in question. To meet this burden, the plaintiff must rely upon the strength of his or her own title or other legal right to the property, and not upon the weakness of the title or legal right asserted by the defendants.

*Carringer v. Taylor*, 586 A.2d 928, 931–32 (Pa.Super. 1990) (cleaned up).

Here, there is no question that Appellees had a clear right to ingress, egress, and regress over White Oak Lane. As discussed above, the prior orders in this case prohibited George from interfering with those rights, and the common law imposed upon him a duty to maintain his portion of the easement. The certified record supports the trial court's finding that George and Joshua unreasonably burdened and interfered with Appellees' ability to use White Oak Lane by creating obstacles and hazards on or alongside the roadway.[5] **See** Plaintiffs' Exhibit 1.

Further, the court, which observed the parties and their evidence, was free to reject George's contention that the state of utter disrepair currently existing on the roadway abutting his property was the result of purposeful misconduct by Appellees, and instead conclude that it flowed from George's post-2009 diversion of water onto the road's dirt surface and his inadequate efforts to address the consequence thereof. **See**, **e.g.**, **DiMaio v. Musso**, 762 A.2d 363, 365 (Pa.Super. 2000) ("Where credibility of witnesses is important to a determination [in equity], the findings of the [court] are entitled to particular weight because the [court] has the opportunity to

_____

[5] Indeed, Joshua testified that he stopped doing any repairs to the road during the year prior to the hearing, and that he no longer drove his car on his side of the road because it was "destroyed" and impassible by lower-riding vehicles. **See** N.T. Hearing, 4/13/22, at 83, 121. For his part, George elected to put in a new roadway from his residence farther up White Oak Lane out to the public road so he "would not have any more trouble with the right-of-way and maintenance on it." **Id**. at 138-39.

- 22 -

observe their demeanor."). Accordingly, even in the absence of a finding of wrongful intent, we discern no abuse of the trial court's equitable powers in directing George to remedy the conditions.

The final issue to be decided is George's complaint that the court exceeded its authority in including in its order a list of White Oak Lane residents, including some who are not parties to this action, who are permitted to "use and maintain the [twenty]-foot right-of-way . . . without interference of the other owners, which shall not be determined to be trespass or other criminal activity[.]" Order, 12/13/22, at ¶ 8.

This Court has held that the owner of an easement "may exercise the remedy of self-help when the possessor of a servient tenement obstructs the dominant estate's easement, because the owner of the dominant estate may enter the servient estate to do anything reasonably necessary to ensure the proper use and enjoyment of the easement." *Rachel Carson Trails Conservancy, Inc. v. Eichner*, 1347 WDA 2022, 2024 WL 512283, at *7 (Pa.Super. Feb. 9, 2024) (non-precedential decision). Therefore, to the extent that the court granted the right of self-help to the original parties to this action and their successors, assigns, and resident spouses,[6] we discern no error. However, we perceive no legal basis for the trial court to have extended the right to use and maintain the easement to individuals whose land does not

---

[6] It is not clear whether Ms. Pletcher's current husband Shawn Pletcher is a co-owner of her parcel.

abut the 790 feet of the easement as established by the 1997 order and plotted by Mr. Young's 2009 survey. Consequently, we vacate paragraph eight of the December 13, 2022 order and remand for the trial court to file an amended order properly limiting the rights of use and maintenance to only eligible parties.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 5/24/2024